**COMET MECHANICAL CONTRACTORS, INC., an Oklahoma Corporation, Plaintiff-Appellant,**

**v.**

**E. A. COWEN CONSTRUCTION, INC., et al., Defendants-Appellees.**

**No. 78–1131.**

United States Court of Appeals, Tenth Circuit.

Argued July 18, 1979.

Decided Jan. 7, 1980.

Robert W. Pittman, Oklahoma City, Okl., for plaintiff-appellant.

John J. Griffin, Jr. of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl. (with William G. Paul of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., and Richard N. Steed of Steed & Bushong, Shawnee, Okl., on the brief), for defendant-appellee E. A. Cowen Construction, Inc.

James W. Bill Berry, Oklahoma City, Okl., for defendant-appellee Wattie Wolfe Co.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Comet Mechanical Contractors, Inc. (Comet), a mechanical subcontractor, brought this suit for treble damages under federal antitrust laws, 15 U.S.C. §§ 1 *et seq.*, against several construction contractors and the then Governor of Oklahoma. The suit charges the defendants with conspiring to rig bids for the construction of two public buildings. Comet claims that bid prices were fixed high enough to allow the defendants to force suppliers and subcontractors, such as Comet, to provide a "kickback" for the use of the Governor. Despite an oral promise, E. A. Cowen Construction, Inc. (Cowen), the successful bidder, refused to award the subcontract for mechanical work to Comet, allegedly because Comet failed to respond to a $100,000 request for the use of the Governor. The court below granted the defendant's motion for summary judgment on the ground that Comet does not satisfy the standing requirements of the antitrust laws. We affirm.

■ Clearly, as Comet states, summary judgment should be invoked cautiously, *Gragg v. Travelers Insurance Co.*, 459 F.2d 418, 421 (10th Cir. 1972), particularly when antitrust issues are involved.[1] *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). Summary judgment is available in antitrust cases only when the facts are developed and the legal issues are clearly presented. *See Nationwide Auto Appraiser Service, Inc. v. Association of Casualty & Surety Cos.*, 382 F.2d 925, 929 (10th Cir. 1967). Nonetheless, the Rules of Civil Procedure apply in antitrust cases and summary judgment is available to avoid needless trials, which may entail a heavy burden of expense and effort for both the litigants and the judicial system. *Farnell v. Albuquerque Publishing Co.*, 589 F.2d 497, 502 (10th Cir. 1978).

Assuming all the facts to be as alleged, we find that, although Comet may have a cause of action for breach of contract, it cannot obtain "the windfall of treble damages." *Conference of Studio Unions v. Loew's Inc.*, 193 F.2d 51, 55 (9th Cir. 1951), *cert. denied*, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952). This court laid out the test for standing under the antitrust laws in *Farnell v. Albuquerque Publishing Co.*, 589 F.2d 497 (10th Cir. 1978):

> To establish standing to maintain a private antitrust action in this Circuit, a plaintiff must meet a two-pronged test. First, he must allege injury to his "business or property" within the meaning of the Act and, second, he must show proximate causation—that the injury directly resulted from a violation of the antitrust laws.

---

1. The reluctance to grant summary judgment in antitrust cases stems from the fact that "the proof is largely in the hands of the alleged conspirators," *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), and the plaintiff should be given ample opportunity for discovery before dismissal. Here, however, the dispute does not turn on the type of evidence likely to become available through discovery. The only fact that is important for standing purposes is the relationship of the parties in the competitive market, and that fact is undisputed.

*Id.* at 500. The second prong of the *Farnell* test, the one which Comet fails to satisfy, is expanded in *Reibert v. Atlantic Richfield Co.*, 471 F.2d 727 (10th Cir.), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973).

> Antitrust violations admittedly create foreseeable ripples of injury to individual stockholders, consumers and employees, but the law has not allowed all of these standing to sue for treble damages. The aggrieved party must satisfy the "by reason of" and/or "by" requirements found in [the antitrust statutes]. This prerequisite boils down to complainant proving that the antitrust violations are the proximate cause of his injury. Two elements are necessary to demonstrate proximate cause: (1) there is a causal connection between an antitrust violation and an injury sufficient to establish the violation as a substantial factor in the occurrence of damage; and (2) that the illegal act is linked to a plaintiff engaged in activities intended to be protected by the antitrust laws.

*Id.* at 731 (citations omitted).

■ While Comet's allegations fall short of establishing both elements of the proximate cause test stated in *Reibert*, we need only discuss the second—whether the plaintiff's activities are within the intended protection of the antitrust laws. *See Harman v. Valley National Bank*, 339 F.2d 564, 567 (9th Cir. 1964); *Productive Inventions, Inc. v. Trico Products Corp.*, 224 F.2d 678, 679 (2d Cir. 1955), *cert. denied*, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956). In *Reibert*, we concluded that only buyers and sellers in the defendants' market are within the target of the antitrust laws. Consequently, an employee whose job was eliminated as a result of an allegedly illegal merger could not recover treble damages because the antitrust violation was directed toward his employer's competitors and not toward employees. 471 F.2d at 731. "[T]he rule is that one who is only *incidentally* injured by

a violation of the antitrust laws,—the bystander who was hit but not aimed at,—cannot recover against the violator." *Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358, 363 (9th Cir. 1955).

This rule's application to the present case is well illustrated by *Conference of Studio Unions v. Loew's Inc.*, 193 F.2d 51 (9th Cir. 1951), *cert. denied*, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952). There the plaintiffs attempted to link a conspiracy among motion picture producers with the loss of employment opportunities to other unions of film laborers.[2] The unconvinced court emphasized:

> [A] plaintiff must show more than that one purpose of the conspiracy was a restraint of trade and that an act has been committed which harms him. He must show that he is within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry.

193 F.2d at 54–55.

Comet's claims closely resemble those in *Reibert* and *Studio Unions*. Comet's business is injured by its inability to obtain the subcontract on the building and its position relative to its competition has therefore been threatened. This is not enough. Comet has not shown itself to be a buyer or a seller in the affected market. In the market for general construction contracts, the state is the buyer and will bear the burden of any fixed price.

At the subcontract level, Comet is indeed a seller. However, the agreement between the successful mechanical subcontractor and Cowen in this single transaction, even if it involved artificially manipulating the price to include an amount for a bribe, is not an antitrust violation against Comet. A buyer and a seller can agree in any particular case to any price they wish. Comet's failure to secure this particular subcontract tells us nothing about its ability to secure subcontracts generally. Absent a claim that me-

---

2. The Conference of Studio Unions alleged that the conspiring producers were forcing independent producers to hire members of competing unions at higher prices in an effort to make it unprofitable for independents to stay in business.

chanical subcontractors in competition with Comet conspired to injure Comet's competitive position, we are unwilling to find standing. Comet's injury is purely an incidental result of anticompetitive activity in another segment of the economy, and

> [t]he lower courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation.

*Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n.14, 92 S.Ct. 885, 891–892, 31 L.Ed.2d 184 (1972).

AFFIRMED.