## BRIDGEPORT HARBOUR PLACE I, LLC *v.* JOSEPH P. GANIM ET AL.
### (SC 18290)

Palmer, Zarella, DiPentima, Lavine and Beach, Js.

Argued March 15—officially released December 13, 2011

*William F. Gallagher*, with whom were *William J. Sweeney* and, on the brief, *Hugh D. Hughes* and *R. Bartley Halloran*, for the appellant (plaintiff).

*Jeffrey J. Mirman*, with whom were *John F. Droney, Jr.*, and, on the brief, *Kurt F. Zimmerman* and *Leonard K. Atkinson*, for the appellee (named defendant).

*Jeffrey J. White,* with whom were *Craig A. Raabe* and, on the brief, *Edward J. Heath* and *Jamie M. Landry,* for the appellee (defendant city of Bridgeport).

*Ira B. Grudberg,* with whom were *Christian Young* and, on the brief, *Trisha M. Morris,* for the appellees (defendant Crescent Avenue Development Company, LLC, et al.).

*Hubert J. Santos,* with whom were *Jeffrey R. Hellman* and, on the brief, *Sandra Snaden Kuwaye,* for the appellees (defendant Charles J. Willinger, Jr., et al.).

*Opinion*

PALMER, J. The plaintiff, Bridgeport Harbour Place I, LLC, brought this action against the defendants, Joseph P. Ganim, the city of Bridgeport (city), Alfred Lenoci, Sr., Alfred Lenoci, Jr., United Properties, Ltd., Eight Hundred Fifteen Lafayette Centre, LLC, United Investments, LLC, United Environmental Redevelopment, LLC, Crescent Avenue Development Company, LLC, Charles J. Willinger, Jr., Willinger, Willinger and Bucci, P.C., Joseph T. Kasper, Jr., Kasper Group, Inc., and Michael Schinella,[1] alleging that the defendants had violated General Statutes § 35-26[2] of the Connecticut Antitrust Act (antitrust act) by engaging in an illegal conspiracy in restraint of trade. The trial court granted the defendants' motions to strike the plaintiff's amended complaint on the ground that the complaint failed to allege an antitrust injury. The plaintiff appealed to the Appellate Court, which affirmed the trial court's judgment. *Bridgeport Harbour Place I, LLC* v. *Ganim,* 111 Conn. App. 197, 210, 958 A.2d 210 (2008). We granted

---

[1] Harbor Communications, Inc., and HNTB Corporation also were named as defendants. The plaintiff subsequently withdrew its complaint against Harbor Communications, Inc., and the action subsequently was withdrawn as against HNTB Corporation.

[2] General Statutes § 35-26 provides: "Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful."

the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the trial court's granting of the defendants' motion[s] to strike?" *Bridgeport Harbour Place I, LLC* v. *Ganim*, 290 Conn. 906, 962 A.2d 793 (2009). We answer that question in the affirmative and, accordingly, affirm the judgment of the Appellate Court.

The following relevant procedural and factual background is set forth in the opinion of the Appellate Court. "In May, 1997, the city . . . requested proposals for the site development of a section of waterfront property known as Steel Point. A development proposal submitted by Bridgeport Renaissance Center, later renamed Harbour Place Limited Partnership and subsequently acquired by the plaintiff, was chosen by the city for the project. On November 18, 1998, the city and the plaintiff signed a development agreement. The plaintiff could not fulfill its obligations under the contract, however, due to the successive withdrawals of several financing partners, and the city terminated the contract in March, 2001.

"According to the plaintiff, it was prevented from completing the development activities specified in the contract by the unlawful conduct of the defendants. Specifically, the plaintiff alleged that the city's mayor, Ganim, engaged in a contract steering scheme in which his coconspirators, Leonard Grimaldi and Paul Pinto, demanded bribes and kickbacks from businesses seeking city contracts and then divided the proceeds of those illegal payments with Ganim. After the contract had been awarded to the plaintiff, the plaintiff refused to participate in the scheme. Thereafter, Ganim and the other defendants allegedly conspired to deprive the plaintiff of its development rights, through corrupt and illegal means, for their own benefit. Because of the unreasonable delays, conditions and demands imposed on the plaintiff, its three financial partners withdrew

from the project, and the plaintiff was unable to fulfill its contractual obligations. From the date it was chosen until it was discharged in March, 2001, the plaintiff had expended millions of dollars in its attempt to complete the project.

"The plaintiff filed a one count complaint on October 19, 2004, claiming that the defendants [had] violated the [antitrust act] by engaging in an illegal conspiracy in restraint of trade. [The plaintiff] sought treble damages pursuant to General Statutes § 35-35.[3] Several of the defendants filed motions to strike the complaint on the ground that it failed to state a legally sufficient antitrust claim. The [trial] court, *Alander, J.*, granted the motions, concluding that the plaintiff's original complaint failed to allege facts that would establish an actual adverse effect on competition as a whole in the relevant market and failed to allege facts that would constitute price discrimination in violation of General Statutes § 35-45.

"The plaintiff timely filed an amended complaint. See Practice Book § 10-44. The amended complaint added one paragraph, alleging, in part, that '[t]he defendants' conduct had an actual adverse effect on competition as a whole in the relevant market of undertaking and completing commercial development in the [c]ity . . . in a timely, cost efficient manner.'[4] The other allegations

---

[3] General Statutes § 35-35 provides: "The state, or any person, including, but not limited to, a consumer, injured in its business or property by any violation of the provisions of this chapter shall recover treble damages, together with a reasonable attorney's fee and costs."

[4] "The added paragraph . . . [provides]: 'The defendants' conduct had an actual adverse effect on competition as a whole in the relevant market of undertaking and completing commercial development in the [c]ity . . . in a timely, cost efficient manner. The defendants' conduct as alleged added the extra cost of corrupt paying as demanded. The corruption and payback system of Ganim, Grimaldi and Pinto, which operated with the cooperation of . . . [city] officials under . . . Ganim, including . . . corporation counsel, leaders of the [c]ity [c]ouncil, its economic director, finance director, zoning officials, comptroller and others caused the market for the commercial development as a whole to be adversely affected.' " *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 111 Conn. App. 201 n.3.

in the amended complaint were the same as in the original complaint, and the plaintiff did not amend its allegations with respect to [its claim of] price discrimination.

"Six of the defendants filed motions to strike the plaintiff's amended complaint, claiming that the plaintiff [had] failed to allege any additional facts that could constitute a cognizable antitrust claim. The court, *Stevens, J.*, heard argument and issued its decision on March 5, 2007, granting the motions of those defendants. In its decision, the court concluded that the allegations in the added paragraph contained only legal or conclusory claims and did not provide a factual basis for an antitrust violation. Further, the court stated that, even if it is assumed that the relevant market was as alleged in the added paragraph, the plaintiff nevertheless failed to allege any facts of a specific nature that demonstrated that the defendants' conduct had an adverse effect on competition in that market. The court noted: 'When taken as true, the facts set forth in the . . . amended complaint establish that the plaintiff lost its ability to develop a single property, Steel Point, due to the improper conduct of the various defendants. The plaintiff has not alleged any particular facts, however, that would indicate that this action prevented other competitors from developing Steel Point or other properties in [the city] under government contracts with the city . . . or otherwise hindered competitors in such pursuits.'

"Subsequently, the [remaining] defendants filed motions to strike the amended complaint on identical grounds. The court granted the motions and . . . rendered judgment in favor of all of the defendants." *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 111 Conn. App. 200–203.

The plaintiff appealed to the Appellate Court from the judgment of the trial court, claiming, inter alia, that

the trial court improperly had determined that the amended complaint failed to allege an antitrust injury. Specifically, the plaintiff contended that the allegations in the amended complaint "that the defendants conspired to exclude competition in connection with eight different city projects through commercial bribery and other unlawful acts were sufficient to support the legal conclusion that the defendants engaged in anticompetitive behavior in commercial development in [the city]." Id., 207. The Appellate Court disagreed, concluding that the amended complaint was "devoid of factual allegations that would support the legal conclusion that the defendants' conduct had an adverse effect on competition as a whole in the relevant market. The plaintiff [did] not allege how the challenged actions decreased competition among developers or how the alleged payback scheme actually affected the marketplace, which allegations are necessary to support a . . . violation [of § 35-26] under a rule of reason analysis. The plaintiff appears to claim that the very fact that the defendants allegedly required anyone who wanted a city contract in [the city] to pay bribes, i.e., they had to 'pay to play,' automatically results in an anticompetitive effect on the market. The plaintiff can cite no case law in support of such a position." Id., 208. The Appellate Court also noted that "the case law suggest[ed] otherwise." Id. In reaching its conclusion, the court relied on three cases, namely, *Expert Masonry, Inc.* v. *Boone County*, 440 F.3d 336, 348 (6th Cir. 2006), *Comet Mechanical Contractors, Inc.* v. *E. A. Cowen Construction, Inc.*, 609 F.2d 404, 406 (10th Cir. 1980), and *Federal Paper Board Co.* v. *Amata*, 693 F. Sup. 1376, 1383 (D. Conn. 1988), that had held that commercial bribery, standing alone, does not constitute anticompetitive behavior under federal antitrust law.

On appeal to this court, the plaintiff contends that the Appellate Court improperly concluded that the

amended complaint fails to allege a cognizable antitrust injury. The plaintiff claims that the complaint, when construed in the light most favorable to sustaining its legal sufficiency, alleges such an injury because it asserts that the defendants "controlled the relevant market to such an extent that they excluded competitors at will through their bribery and kickback scheme." In particular, the plaintiff contends that "[t]he restraint alleged [in the complaint] is that of a general contractor, the Lenocis and their cronies, conspiring with the mayor [Ganim] who controlled the city . . . ." The plaintiff further contends that "the Lenocis' control over [Ganim] effectively precluded competition among general contractors." According to the plaintiff, "[b]ecause so many publicly bid projects were controlled by the Lenocis and involved kickbacks and bribes, this had the effect of stifling competition for these kinds of projects." Finally, the plaintiff contends that paragraph twenty-seven of the amended complaint,[5] which identifies eight city contracts that the Lenocis allegedly obtained as a result of corrupt payments, supports the claim that the defendants' conduct had an anticompetitive effect on the market as a whole. We are not persuaded by the plaintiff's claim.

The following legal principles guide our analysis. "A motion to strike challenges the legal sufficiency of a

[5] Paragraph twenty-seven of the plaintiff's amended complaint provides in relevant part: "Ganim, acting through his office and through and in cooperation with various municipal officials and employees he influenced through corrupt payments of extraordinary benefits, appointments, awards of city contracts to relatives, was engaged in a massive, hidden conspiracy with the defendants and others, Willinger, Lenoci Sr., Lenoci Jr., Pinto, Grimaldi, Kasper and Schinella to illegally profit from the awarding and completion of contracts with the [c]ity . . . . The corrupt agreements included but were not limited to those involving the sewer treatment facility, the baseball park, the hockey stadium, the removal of asbestos, the public relations campaign for [the city], the clean and green program for the removal of distressed buildings, the redevelopment of Father Panik [V]illage, the redevelopment of Steel Point and the awarding of contracts for legal services, all in the restraint of trade . . . ."

pleading . . . and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 64–65, 793 A.2d 1048 (2002). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003).

Furthermore, General Statutes § 35-44b provides that, in construing the antitrust act, "the courts of this state shall be guided by interpretations given by the federal courts to federal antitrust statutes."[6] With respect to the allegations necessary to state a cognizable antitrust claim, the United States Supreme Court has explained that, in pleading such a claim, "a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ."[7] (Citations omitted.) *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see also *Todd* v. *Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.

[6] See *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 15–16, 664 A.2d 719 (1995) ("we follow federal precedent when we interpret the [antitrust] act unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently"); see also *Brown & Brown, Inc.* v. *Blumenthal*, 297 Conn. 710, 727, 1 A.3d 21 (2010) ("[t]he antitrust act intentionally was patterned after federal antitrust law").

[7] We note, moreover, that, because Connecticut is a fact pleading state; see, e.g., *Sullins* v. *Rodriguez*, 281 Conn. 128, 147, 913 A.2d 415 (2007); see also Practice Book § 10-1; this point has particular pertinence to cases, like the present one, involving claims under this state's antitrust laws.

2001) (in deciding motion to dismiss for failure to state claim, "[i]t is . . . improper [for the court] to assume that the [plaintiff] can prove facts that it has not alleged or that the [defendant has] violated the antitrust laws in ways that have not been alleged" [internal quotation marks omitted]); *Furlong* v. *Long Island College Hospital*, 710 F.2d 922, 927 (2d Cir. 1983) (conclusory allegations cannot "substitute for minimally sufficient factual allegations").

"Section 35-26 is substantially identical to § 1 of the Sherman Act; 15 U.S.C. § 1;[8] and applies to contracts, combinations, or conspiracies in restraint of trade or commerce." *Shea* v. *First Federal Savings & Loan Assn. of New Haven*, 184 Conn. 285, 305, 439 A.2d 997 (1981). It is well settled that "Congress designed the Sherman Act as a consumer welfare prescription." (Internal quotation marks omitted.) *Reiter* v. *Sonotone Corp.*, 442 U.S. 330, 343, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979). "Consumer welfare is maximized when economic resources are allocated to their best use . . . and when consumers are assured competitive price and quality." (Citation omitted.) *Rebel Oil Co.* v. *Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir.), cert. denied, 516 U.S. 987, 116 S. Ct. 515, 133 L. Ed. 2d 424 (1995). "Accordingly, an act is deemed *anticompetitive* under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality." (Emphasis in original.) Id.

"A violation of [§] 1 [of the Sherman Act] generally requires a combination or other form of concerted action between two legally distinct entities resulting in an unreasonable restraint on trade. . . . If a restraint

---

[8] Title 15 of the 2006 edition of the United States Code, § 1, provides in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. . . ."

alleged is among that small class of actions that courts have deemed to have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, it will be unreasonable per se . . . . Most antitrust claims, however, [like those asserted in the present case] are analyzed under a rule of reason analysis which seeks to determine if the alleged restraint is unreasonable because its anticompetitive effects outweigh its procompetitive effects." (Citations omitted; internal quotation marks omitted.) *E & L Consulting, Ltd.* v. *Doman Industries Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006), cert. denied, 552 U.S. 816, 128 S. Ct. 97, 169 L. Ed. 2d 22 (2007).

In order to establish an anticompetitive effect sufficient to avoid dismissal of a complaint for failure to state a claim, it is not enough to allege an injury to a competitor. See *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977) (antitrust laws were designed "for the protection of competition, not competitors" [internal quotation marks omitted]). Rather, "the inquiry under the rule of reason is directed at the challenged restraint's overall impact on competitive conditions, rather than whether a particular party has been restrained by the conduct at issue." *Berman Enterprises, Inc.* v. *Local 333, United Marine Division*, 644 F.2d 930, 937 (2d Cir.), cert. denied, 454 U.S. 965, 102 S. Ct. 506, 70 L. Ed. 2d 381 (1981). Accordingly, "[u]nder the rule of reason, the [plaintiff bears] an initial burden to demonstrate [that] the [defendant's] challenged behavior had an actual adverse effect on competition as a whole in the relevant market." (Internal quotation marks omitted.) *Major League Baseball Properties, Inc.* v. *Salvino, Inc.*, 542 F.3d 290, 317 (2d Cir. 2008). "Anticompetitive effects, more commonly referred to as 'injury to competition' or 'harm to the competitive process,' are usually measured by a reduction in output and

an increase in prices in the relevant market." *Sullivan* v. *National Football League*, 34 F.3d 1091, 1096–97 (1st Cir. 1994), cert. denied, 513 U.S. 1190, 115 S. Ct. 1252, 131 L. Ed. 2d 133 (1995); see also *Virgin Atlantic Airways Ltd.* v. *British Airways PLC*, 257 F.3d 256, 264 (2d Cir. 2001) ("whether an actual adverse effect has occurred is determined by examining factors like reduced output, increased prices and decreased quality").

Upon review of the plaintiff's amended complaint, we conclude that the Appellate Court properly upheld the trial court's decision to grant the defendants' motions to strike because the complaint is devoid of facts demonstrating that the defendants' alleged bribery scheme actually had an adverse effect on competition. Almost every paragraph of the thirty-three page amended complaint focuses on the various ways in which the defendants' conduct injured the plaintiff *individually* by preventing it from completing the Steel Point project.[9] There is not a single allegation in the

---

[9] The following allegations of the amended complaint are representative of the entire complaint: "40. On or about January 27, 1999, as a result of the illegal conspiracy in restraint of trade by the defendants, the [plaintiff's] development partner . . . withdrew from the Steel Point project."

"46. In April of 1999, less than one month after the known extension of the development agreement with the plaintiff, Pinto and the defendants Lenoci Sr., Lenoci Jr., and Ganim agreed to select and cause other officials and employees to sabotage the [plaintiff's] plan to develop the Steel Point site, in direct derogation of the [plaintiff's] rights under the development agreement."

"51. The defendant . . . Willinger intentionally . . . and in bad faith inserted commercially unreasonable terms and conditions into the [Steel Point] agreement, intentionally delayed the completion of the agreements, participated in a scheme to steer [c]ity contracts on the project to entities who would pay fees to [the] conspirators, and who would act to further delay and interpose unfair development conditions [on] the Steel Point project."

"53. From May of 1999 through January of 2000, while the plaintiff was attempting in good faith to complete the transaction, [certain of the defendants] were engaged in a conspiracy in restraint of trade or commerce to deprive the plaintiff of its rights."

"56. Unaware of the fact that the mayor [Ganim] . . . had entered into a corrupt agreement to block and [to] interfere with [the plaintiff's] contractual

complaint explaining how the bribery scheme reduced output or raised prices, the sine qua non of an antitrust injury. Furthermore, although the plaintiff argues that the Lenocis' control over Ganim effectively precluded general contractors from competing for projects open to public bidding, the amended complaint itself contains no such allegation. As the defendants note, the amended complaint does not even identify a general contractor, other than the plaintiff, that was adversely affected by the defendants' scheme. Much less does the amended complaint allege facts demonstrating that general contractors as a group were precluded from competing for city contracts. The thrust of the amended complaint, rather, is that any general contractor that wanted to do business with the city could do so but had to pay to play.[10] As the District Court explained in *Federal Paper*

rights, the plaintiff continued to try to complete the Steel Point [p]roject, spending large sums of money on all of the various components of the project . . . ."

"65. The defendants . . . Lenoci Sr. . . . Lenoci [Jr.] . . . Schinella, and the related Lenoci [c]orporations . . . engaged in an illegal conspiracy in restraint of trade in one or more of the following ways:

\* \* \*

"d) by engaging in a myriad of illegal schemes to enrich the mayor [Ganim] and other [city] officials . . . in order to obtain the cooperation of those officials in frustrating the development attempts of the [p]laintiff, [and]

"e) by providing the chief elected official of the [c]ity . . . with items of value in order to secure his cooperation in frustrating the development attempts of the plaintiff."

"67. The defendant[s] . . . Kasper and Kasper Group [Inc.] engaged in a conspiracy in restraint of trade in one or more of the following ways

"a) by attempting to insert the Lenoci defendants into the Steel Point project;

"b) by paying bribes to the mayor [Ganim] . . .

"c) by conspiring with the Lenocis and the Lenoci controlled entities to steal the [plaintiff's] development project

"d) by deceiving the plaintiff and hiding from the plaintiff the illegal conspiracy [and]

"e) by paying sums of money to other conspirators in support of the conspiracy . . . ."

[10] For example, paragraph twenty-eight of the amended complaint provides in relevant part: "At all times mentioned herein, and for a long time prior to the incidents described in this complaint, Pinto and Grimaldi received

*Board Co.* v. *Amata,* supra, 693 F. Sup. 1376, however, "[t]he payment of bribes by suppliers to a purchasing agent does not by itself establish an anticompetitive effect. Although the bribes may have been illegal and unfair methods of competition, their illegality and unfairness [do] not support an inference that the bribes restrained competition. On the contrary, bribery could have been consistent with intense competition among the suppliers—some of which resorted to illegal measures to gain an advantage." Id., 1383.

As the Appellate Court noted, moreover, even if the plaintiff adequately alleged in its amended complaint an anticompetitive impact on the market, federal courts have concluded that commercial bribery does not constitute a restraint of trade within the meaning of the Sherman Act. See *Bridgeport Harbour Place I, LLC* v. *Ganim,* supra, 111 Conn. App. 208. We are aware of no case in which governmental corruption was found to fall within the purview of federal antitrust law.

Recently, in *Coll* v. *First American Title Ins. Co.,* 642 F.3d 876 (10th Cir. 2011), the Tenth Circuit Court of Appeals engaged in a comprehensive review of the governing case law in explaining why commercial bribery of government officials does not constitute a

payments from businesses seeking to do business with the [c]ity . . . and then shared the proceeds of these payments with . . . Ganim."

Paragraph thirty-three of the amended complaint provides in relevant part: "Unlike other businesses in the [c]ity . . . the plaintiff refused to pay . . . or associate itself with the members of the conspiracy, in order to complete [the Steel Point] development project. As a result, the [d]efendant . . . Ganim, through the members of his administration, paid consultants . . . Willinger and the Willinger firm prevented [the] [p]laintiff from completing the [Steel Point] transaction."

Paragraph thirty-six provides in relevant part: "During the period of the plaintiff's development of Steel Point, the defendant Willinger represented the defendants Lenoci Sr., Lenoci Jr., and their related companies, and Pinto, Grimaldi, Kasper and related companies, and Ganim . . . received from the defendants [money] extorted from persons seeking to do business with the [c]ity . . . ."

restraint of trade for purposes of the Sherman Act. The analysis of the court in *Coll*, with which we agree, bears repeating. "In *Parker* [v. *Brown*, 317 U.S. 341, 63 S. Ct. 307, 87 L. Ed. 315 (1943)], the [United States] Supreme Court held that the . . . Sherman Act's proscription of anti-competitive conduct did not apply to government action. See [id., 350–52]. Later in [*Eastern R. Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) (*Noerr*)], the [c]ourt addressed the other side of the same coin, [*Columbia* v. *Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 383, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991)], concluding that the Sherman Act also did not proscribe private citizens' conduct undertaken to influence government action. See [*Eastern R. Presidents Conference* v. *Noerr Motor Freight, Inc.*, supra, 135–37]. That is so because the purpose of the Sherman Act is to regulate business, not political activity. See [id., 137]. This was true, according to *Noerr*, even if the conduct by which citizens attempted to influence governmental regulation was undertaken for the sole purpose of destroying competition, involved unethical business practices, or was specifically intended to hurt competitors. See [id., 138–45]. In fact, *Noerr* addressed claims of egregious private conduct, including assertions that a number of railroads conspired to engage in a publicity campaign against their competitors in the trucking industry designed to foster the adoption and retention of laws and law enforcement practices destructive of the trucking business, to create an atmosphere of distaste for the truckers among the general public, and to impair the relationships existing between the truckers and their customers. [Id., 129–30]. . . .

"Notwithstanding this deceptive and unethical business conduct, the [c]ourt held that the Sherman Act did not apply to proscribe it. See [id., 140–41]. [The court in *Noerr* stated that] [i]nsofar as [the Sherman]

Act sets up a code of ethics at all, it is a code that condemns trade restraints, not political activity, and . . . a publicity campaign to influence governmental action falls clearly into the category of political activity. The proscriptions of the [Sherman] Act, tailored as they are for the business world, are not at all appropriate for application in the political arena. [Id.]

"In conclusion, [the court in] *Noerr* noted that the fight between the railroads and the truckers appears to have been conducted along lines normally accepted in our political system, except to the extent that each group has deliberately deceived the public and public officials. And that deception, reprehensible as it is, can be of no consequence so far as the Sherman Act is concerned. [Id., 144–45].

\* \* \*

"More recently, the [United States] Supreme Court, relying on its reasoning in *Noerr*, held that the Sherman Act did not proscribe private citizens' conduct undertaken to influence government action, even if that conduct involved conspiracy or bribery. In [*Columbia* v. *Omni Outdoor Advertising, Inc.*, supra, 499 U.S. 365], a jury found that a billboard company conspired with city officials to obtain legislation that protected the billboard company's monopolization of the billboard market within the city [of Columbia, South Carolina] and that restrained the business of a competitor billboard company. See [id., 368–69]. Nevertheless, the . . . [c]ourt held that the Sherman Act did not apply to such conduct, which was undertaken to influence governmental action. See [id., 384]. In reaching this conclusion, the [c]ourt first rejected a conspiracy exception to *Parker* state-action immunity. See [id., 374–75]. Since it is both inevitable and desirable that public officials often agree to do what one or another group of private citizens urges upon them, such an

exception would virtually swallow up the *Parker* rule: All anticompetitive regulation would be vulnerable to a conspiracy charge. [Id., 375]. The [c]ourt applied this same reasoning to reject a conspiracy exception to *Noerr* immunity, too: The same factors [that] . . . make it impracticable or beyond the purpose of the antitrust laws to identify and invalidate lawmaking that has been infected by selfishly motivated agreement with private interests likewise make it impracticable or beyond that scope to identify and invalidate lobbying that has produced selfishly motivated agreement with public officials. It would be unlikely that any effort to influence legislative action could succeed unless one or more members of the legislative body became . . . co-conspirators in some sense with the private party urging such action. [Id., 383–84] . . . .

"[*Columbia*] went further, rejecting exceptions to *Parker* and *Noerr* immunity even for conspiracies involving corruption. See [id., 376–79]. A conspiracy exception narrowed along such vague lines is similarly impractical. Few governmental actions are immune from the charge that they are not in the public interest or in some sense corrupt. . . . The fact is that virtually all regulation benefits some segments of . . . society and harms others; and that it is not universally considered contrary to public good if the net economic loss to the losers exceeds the net economic gain to the winners. [Id., 377]. . . .

"[To] carve out a special exclusion to [the] *Noerr-Pennington*[11] [doctrine] when the corruption involves some ill-defined and open-ended concept of bribery or other acts that might violate state or federal law . . . would, of course, vitiate [the] *Noerr-Pennington* [doctrine] almost entirely because there is hardly any lob-

---

[11] *United Mine Workers* v. *Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965).

bying effort that is not open to at least a charge of some illegal dealings when important economic interests are at stake. . . . The Supreme Court in [*Columbia*] understood that risk and held that corruption—and even bribery explicitly—would not vitiate a claim of *Noerr-Pennington* immunity. The [c]ourt said: Such unlawful activity has no necessary relationship to whether the governmental action is in the public interest. A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid . . . . To use unlawful political influence as the test of legality of state regulation undoubtedly vindicates (in a rather blunt way) principles of good government. But the [Sherman Act] . . . is not directed to that end. Congress has passed other laws aimed at combating corruption in state and local governments. Insofar as the Sherman Act sets up a code of ethics at all, it is a code that condemns trade restraints not political activity. [Id., 378–79]." (Citations omitted; internal quotation marks omitted.) *Coll* v. *First American Title Ins. Co.*, supra, 642 F.3d 896–98; see also *Armstrong Surgical Center, Inc.* v. *Armstrong County Memorial Hospital*, 185 F.3d 154, 162 (3d Cir. 1999) ("Liability for [anticompetitive] injuries caused by . . . state action is precluded [under the Sherman Act] even [when] it is alleged that a private party urging the action did so by bribery, deceit or other wrongful conduct that may have affected the decision making process. The remedy for such conduct rests with laws addressed to it and not with courts looking behind sovereign state action at the behest of antitrust plaintiffs. Federalism requires this result both with respect to state actors and with respect to private parties who have urged the state action."), cert. denied, 530 U.S. 1261, 120 S. Ct. 2716, 147 L. Ed. 2d 982 (2000); *Comet Mechanical Contractors, Inc.* v. *E. A. Cowen Construction, Inc.*, supra, 609 F.2d 406–407 (plaintiff's allegation that it was

denied government contract because it refused to pay bribe to government official did not establish antitrust violation); *Calnetics Corp.* v. *Volkswagen of America, Inc.*, 532 F.2d 674, 687 (9th Cir.) ("commercial bribery, standing alone, does not constitute a violation of the Sherman Act"), cert. denied, 429 U.S. 940, 97 S. Ct. 355, 50 L. Ed. 2d 309 (1976).

As the foregoing case law makes clear, the plaintiff's allegation that the defendants took bribes and kick-backs in exchange for steering public contracts does not state a cognizable antitrust claim.[12] Accordingly, we agree with the Appellate Court that the trial court properly granted the defendants' motions to strike the plaintiff's amended complaint.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[12] This does not mean that there can be no remedy for the plaintiff's injuries. Indeed, the plaintiff brought a separate action against several of the defendants for, among other wrongful acts, breach of contract, tortious interference with contractual relations, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. See *Bridgeport Harbour Place I, LLC* v. *Ganim*, 131 Conn. App. 99, 104, 30 A.3d 703 (2011). The jury rendered a verdict in favor of the plaintiff on several counts and awarded the plaintiff $366,524 in damages. Id., 111–12. Thereafter, the court awarded the plaintiff punitive damages, attorney's fees and costs in accordance with the jury's findings on the CUTPA claim. Id., 113. The Appellate Court recently affirmed the judgment in that case. Id., 178. Federal authorities also successfully prosecuted several of the defendants for bribery, mail fraud and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (1994), in addition to other crimes.