# TREMONT PUBLIC ADVISORS, LLC *v.* CONNECTICUT RESOURCES RECOVERY AUTHORITY
## (SC 20119)

Robinson, C. J., and McDonald, Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff public affairs firm sought to recover damages from the defendant, a quasi-public agency responsible for providing solid waste disposal and recycling services to numerous Connecticut municipalities, alleging that it had engaged in certain anticompetitive practices by conducting a sham public bidding process in connection with its award of a contract for municipal government liaison services in violation of the Connecticut Antitrust Act (§ 35-24 et seq.). The defendant had issued a request for proposals for a multiyear liaison services contract. The plaintiff and B Co., a law firm that had provided the defendant with liaison services since 2006, were the only bidders for the contract, and, even though the plaintiff's bid complied with the request for proposals and B Co.'s did not, the defendant ultimately awarded the contract to B Co. The plaintiff alleged that the defendant had evaluated the bids in a biased manner to ensure that B Co. was awarded the contract, in violation of its own procurement policies and the competitive bidding statute (§ 22a-268) requiring the defendant to engage in open and competitive bidding for contracts with outside vendors. The plaintiff further alleged that the defendant awarded the contract to B Co. because B Co. carried out lobbying services on behalf of the defendant in violation of

the statute (§ 1-101bb) prohibiting quasi-public agencies such as the defendant from retaining lobbyists. In addition, the plaintiff alleged that the defendant's conspiracy with B Co. had reduced the number of competitors for the liaison services contract, had increased the price paid by the defendant for liaison services, resulting in higher costs for those municipalities that dealt with the defendant, and had adversely affected the quality of the defendant's services. The defendant moved to dismiss the plaintiff's operative complaint, claiming, inter alia, that the plaintiff lacked standing to bring the antitrust claim because it did not allege that it had suffered an antitrust injury and that it was an efficient enforcer of the antitrust laws. The defendant also moved to strike the complaint, contending that the plaintiff had failed to allege facts sufficient to demonstrate an antitrust violation. The trial court denied the motion to dismiss, concluding, inter alia, that the plaintiff had standing to bring an antitrust claim against the defendant on the basis of the defendant's alleged violation of a competitive bidding law pursuant to this court's decision in *Cheryl Terry Enterprises, Ltd.* v. *Hartford* (270 Conn. 619). The trial court, however, granted the defendant's motion to strike on the ground that the plaintiff had failed to allege an antitrust injury because its allegations were conclusory and there was no allegation that the defendant's conduct has an adverse effect on competition as a whole in the relevant market of which it is a member. The trial court further found that, to the extent that being an efficient enforcer of the antitrust laws is required to state a cognizable claim under Connecticut law, the plaintiff also failed to adequately plead that element. Thereafter, the trial court rendered judgment for the defendant, from which the plaintiff appealed and the defendant cross appealed. *Held* that the trial court correctly concluded that the plaintiff failed to sufficiently allege an antitrust injury, but, because the failure to allege an antitrust injury implicates the plaintiff's standing and, thus, a court's subject matter jurisdiction, the trial court should have granted the defendant's motion to dismiss rather than its motion to strike: this court relied on federal case law, in accordance with the legislative intent expressed in the Connecticut Antitrust Act (§ 35-44b), in concluding that, to have standing to bring a claim under that act, a plaintiff must adequately allege both that it has suffered an antitrust injury and that it is an efficient enforcer of the antitrust laws, and, because a claim that a plaintiff has failed to allege either of those elements implicates the trial court's subject matter jurisdiction, such a claim should be raised in a motion to dismiss; in the present case, although the plaintiff alleged that the defendant's conduct had the anticompetitive effects of reducing the quality of its services and increasing its prices, it failed to demonstrate that the defendant's conduct itself was anticompetitive, as an agreement to provide illegal lobbying services in exchange for the award of a public contract, which does not restrict a purchaser's freedom of choice or prevent other potential bidders from competing, does not

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

constitute a restraint of trade for purposes of antitrust law from which an antitrust injury could be inferred; moreover, because the plaintiff lacked standing as a result of its failure to allege an antitrust injury and the trial court therefore lacked subject matter jurisdiction, this court concluded that the form of the trial court's judgment, which was based on the granting of the defendant's motion to strike, was improper, and it vacated the granting of the motion to strike and remanded the case with direction to grant the defendant's motion to dismiss instead.

*Cheryl Terry Enterprises, Ltd.* v. *Hartford* (270 Conn. 619), to the extent that it suggests a plaintiff need not allege that it has suffered an antitrust injury to establish standing to pursue an antitrust claim, overruled.

Argued January 14—officially released November 12, 2019

*Procedural History*

Action to recover damages for, inter alia, the defendant's violation of state antitrust law, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Peck, J.*, denied the defendant's motion to dismiss and granted the defendant's motion to strike the second substituted complaint and rendered judgment thereon, from which the plaintiff appealed and the defendant cross appealed. *Improper form of judgment*; *vacated*; *judgment directed*.

*Michael C. Harrington*, with whom, on the brief, were *Melissa A. Federico* and *Sarah Gruber*, for the appellant-cross appellee (plaintiff).

*Matthew C. Welnicki*, for the appellee-cross appellant (defendant).

*Opinion*

ROBINSON, C. J. The primary issue that we must resolve in this appeal is whether allegations that a quasi-public agency engaged in a sham competitive bidding procedure and awarded a contract to a preselected entity for corrupt reasons and in violation of a competitive bidding statute are sufficient to support a claim that the agency violated the Connecticut Antitrust Act, General Statutes § 35-24 et seq. (antitrust act). The

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

plaintiff, Tremont Public Advisors, LLC, is a public affairs firm. The defendant, the Connecticut Resources Recovery Authority, is a quasi-public agency responsible for providing solid waste disposal and recycling services to numerous municipalities in this state pursuant to the Connecticut Solid Waste Management Services Act, General Statutes § 22a-257 et seq.[1] In 2011, the defendant issued a request for proposals for the provision of municipal government liaison services (liaison services). The plaintiff submitted a proposal that complied with the request for proposals, but the defendant awarded the liaison services contract to the law firm of Brown Rudnick, LLP (Brown Rudnick), whose proposal was noncompliant. Thereafter, the plaintiff brought this action alleging that the defendant's request for proposals was a sham and that the defendant had violated General Statutes § 22a-268,[2]

---

[1] In 2014, the legislature amended the Connecticut Solid Waste Management Services Act. See Public Acts 2014, No. 14-94 (P.A. 14-94). As part of the amendments, the legislature changed the name of the defendant to the Materials Innovation and Recycling Authority. See P.A. 14-94, § 1 (a), codified at General Statutes § 22a-261 (a).

[2] General Statutes § 22a-268 provides in relevant part: "The authority shall utilize private industry, by contract, to carry out the business, design, operating, management, marketing, planning and research and development functions of the authority, unless the authority determines that it is in the public interest to adopt another course of action. The authority is hereby empowered to enter into long-term contracts with private persons for the performance of any such functions of the authority which, in the opinion of the authority, can desirably and conveniently be carried out by a private person under contract provided any such contract shall contain such terms and conditions as will enable the authority to retain overall supervision and control of the business, design, operating, management, transportation, marketing, planning and research and development functions to be carried out or to be performed by such private persons pursuant to such contract. Such contracts shall be entered into either on a competitive negotiation or competitive bidding basis, and the authority in its discretion may select the type of contract it deems most prudent to utilize, pursuant to the contracting procedures adopted under section 22a-268a and considering the scope of work, the management complexities associated therewith, the extent of current and future technological development requirements and the best interests of the state. Whenever a long-term contract is entered into on other than a competitive bidding basis, the criteria and procedures therefor

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

which, according to the plaintiff, mandates a competitive bidding procedure for the liaison services contract. The plaintiff further alleged that the defendant's conduct excluded competitors for the liaison services contract in violation of the antitrust act. The defendant filed a motion to dismiss the second substituted complaint, claiming, inter alia, that the plaintiff lacked standing to bring the antitrust claim. The defendant also filed a motion to strike, claiming that, even if the plaintiff had standing, it had not adequately alleged that the defendant's conduct had an adverse effect on competition as a whole in the relevant market, proof of which is required to establish a violation of the antitrust act, but had alleged only that it had an adverse effect on the plaintiff itself. The trial court denied the motion to dismiss but granted the motion to strike and rendered judgment in favor of the defendant. This appeal by the plaintiff and cross appeal by the defendant followed.[3] We conclude that the plaintiff lacked standing to bring this action because it did not adequately allege an antitrust injury, and, therefore, the trial court improperly denied the defendant's motion to dismiss the second substituted complaint. Accordingly, we affirm the judgment in favor of the defendant.

The record reveals the following facts that are undisputed or that the plaintiff has alleged, which we assume

shall conform to applicable provisions of subdivision (16) of subsection (a) and subsections (b) and (c) of section 22a-266, provided however, that any contract for a period of over five years in duration, or any contract for which the annual consideration is greater than fifty thousand dollars shall be approved by a two-thirds vote of the authority's full board of directors. The terms and conditions of such contracts shall be determined by the authority, as shall the fees or other similar compensation to be paid to such persons for such contracts. The contracts entered into by the authority shall not be subject to the approval of any other state department, office or agency. . . .''

[3] The plaintiff appealed and the defendant cross appealed to the Appellate Court, and we transferred the appeal and cross appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

to be true for purposes of reviewing the trial court's denial of the defendant's motion to dismiss. See, e.g., *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 516, 923 A.2d 638 (2007). The plaintiff is a public affairs firm located in Hartford, and the defendant is a quasi-public agency responsible for implementing the statutory solid waste management plan and providing solid waste disposal and recycling services to numerous municipalities in the state. The defendant is empowered to enter into contracts with private entities "to carry out the business, design, operating, management, marketing, planning and research and development functions of the authority . . . ." General Statutes § 22a-268. Section 22a-268 requires the defendant to engage in open and competitive bidding for its contracts with outside vendors. General Statutes § 22a-268 ("[s]uch contracts shall be entered into either on a competitive negotiation or competitive bidding basis"). In addition, the defendant's own procurement policies require it to select the bidder who submits the most responsive qualified bid or proposal and not to award contracts to entities in which a public official has an interest.

For several years prior to 2011, the defendant contracted with Brown Rudnick to provide liaison services with Connecticut municipalities. On May 26, 2006, the defendant awarded a one year liaison services contract to Brown Rudnick without seeking competitive bids for the provision of the services. On May 21, 2007, the defendant's president informed Brown Rudnick by e-mail that renewal of the contract " 'should not be an issue but we will have to go through the motions of [c]ommittee approval and [b]oard [a]pproval.' " Several days later, on May 24, 2007, the defendant's president sent another e-mail to Brown Rudnick stating that the defendant would have to issue a request for proposals for liaison services in order to " 'help [the defendant] defend [its] choice.' " The e-mail also stated that Brown

Rudnick would receive a package that it was to
" 'respond to as [it had] in the past' " and that the defendant would extend Brown Rudnick's existing contract
on a month-to-month basis until a new one was put
into effect. On May 31, 2007, the defendant extended
Brown Rudnick's contract to June 30, 2007. The defendant later extended the contract to September 30, 2007,
and, still later, to September 30, 2008. After the contract
expired, the defendant continued to pay Brown Rudnick
pursuant to the contract terms.

On August 18, 2009, an official employed by the defendant informed another of the defendant's officials by
e-mail that the defendant intended to award the liaison
services contract to Brown Rudnick, but, in order to
create the impression of propriety, Brown Rudnick
wanted to be interviewed so that the defendant could
say that it had " 'check[ed] the box.' " On November 1,
2009, the defendant awarded a one year liaison services
contract to Brown Rudnick. On October 25, 2010, the
defendant extended the contract to October 31, 2011.

On May 23, 2011, the defendant issued a request for
proposals for the provision of liaison services for the
period of November 1, 2011, through June 30, 2014. The
plaintiff submitted a proposal that complied with all of
the requirements of the request for proposals. Brown
Rudnick also submitted a proposal, which was non-
compliant because it failed to propose an hourly fee.
On June 28, 2011, Paul Nonnenmacher, the defendant's
director of public affairs, sent an e-mail to Ronald E.
Gingerich, the defendant's manager of development,
environmental compliance and information technology, reporting that he had completed his evaluation of
the responses to the request for proposals. Gingerich
responded that he would draft a memorandum to the
defendant's board of directors regarding the evaluation.
The next day, June 29, 2011, Gingerich sent an e-mail
to Matthew Hennessy, the plaintiff's managing direc-

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

tor, in response to an inquiry from Hennessy about the status of the defendant's interviews with selected proposers. In that e-mail, Gingerich indicated that the defendant had been ''delayed in initiating the review of the proposals'' and that ''[n]o interviews [of the firms that submitted proposals] are scheduled.'' No interviews were ever conducted.

On September 12, 2011, the defendant informed the plaintiff that the liaison services contract had been awarded to Brown Rudnick. On September 15, 2011, two officials employed by the defendant, one of whom had been appointed by a partner at Brown Rudnick while acting in his capacity as an elected state official, voted to recommend to the defendant's board of directors that Brown Rudnick be awarded the contract. Although the board of directors was prepared to vote on awarding the liaison services contract to Brown Rudnick at its September 29, 2011 meeting, the defendant ultimately bypassed its board of directors and extended the preexisting contract with Brown Rudnick for another year, up to October 31, 2012. In October, 2012, the defendant incorporated the liaison services contract into its general legal services contract with Brown Rudnick.

Thereafter, the plaintiff brought this action against the defendant, alleging that the defendant had evaluated the bids to provide liaison services in a biased manner so as to ensure that Brown Rudnick was selected, that the public bidding process for the liaison services contract was a sham and that the award of the contract to Brown Rudnick without a legitimate public bidding process violated § 22a-268 and the defendant's own procurement policies. The plaintiff further alleged that the defendant awarded the liaison services contract to Brown Rudnick because Brown Rudnick carried out lobbying activities on behalf of the defendant in viola-

tion of General Statutes § 1-101bb.[4] The plaintiff claimed
in count one of the complaint that this conduct deprived
the plaintiff and others of an opportunity to compete
for the liaison services contract in violation of the anti-
trust act.[5]

The defendant moved to dismiss the complaint on
the grounds that (1) under General Statutes § 35-31 (b),[6]
the antitrust act did not apply to its conduct in entering
into the liaison services contract with Brown Rudnick
because it was acting pursuant to its statutory obliga-
tions as set forth in § 22a-268, and (2) the plaintiff lacked
standing because it had not alleged that it had suffered
an antitrust injury or that it was an efficient enforcer
of the antitrust laws.[7] The defendant also filed a motion

---

[4] General Statutes § 1-101bb provides: "No quasi-public agency, as defined
in section 1-120, or state agency may retain a lobbyist, as defined in section
1-91. The provisions of this chapter shall not be construed to prohibit a
director, officer or employee of a quasi-public agency or state agency from
lobbying, as defined in section 1-91, on behalf of the quasi-public agency
or state agency."

[5] In count two of the complaint, the plaintiff asserted a common-law
unsuccessful bidder claim alleging that the defendant's award of the liaison
services contract to Brown Rudnick was the result of the defendant's fraud,
corruption or favoritism, and defeated the integrity of the bidding process.
The trial court ultimately granted the defendant's motion to dismiss that
claim as moot, and that ruling is not at issue in this appeal. All references in
this opinion to the complaint, substituted complaint and second substituted
complaint are to the plaintiff's claim that the defendant violated the anti-
trust act.

[6] General Statutes § 35-31 (b) provides: "Nothing contained in this chapter
shall apply to those activities of any person when said activity is specifically
directed or required by a statute of this state, or of the United States."

[7] See *In re Aluminum Warehousing Antitrust Litigation*, 833 F.3d 151,
157 (2d Cir. 2016) ("a private antitrust plaintiff must plausibly allege that
[1] it suffered an antitrust injury and [2] it is an acceptable plaintiff to pursue
the alleged antitrust violations," i.e., that it is "an 'efficient enforcer' "); *Gatt
Communications, Inc.* v. *PMC Associates, LLC*, 711 F.3d 68, 78 (2d Cir.
2013) ("[t]o determine whether a putative antitrust plaintiff is an efficient
enforcer of the antitrust laws, we examine primarily the following factors:
[1] the directness or indirectness of the asserted injury; [2] the existence of
an identifiable class of persons whose self-interest would normally motivate
them to vindicate the public interest in antitrust enforcement; [3] the specula-
tiveness of the alleged injury; and [4] the difficulty of identifying damages

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

to strike the complaint, contending that the plaintiff had failed to plead sufficient anticompetitive acts, a relevant market or harm to the relevant market, but had pleaded harm only to an individual competitor.

Relying on *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 270 Conn. 619, 632, 854 A.2d 1066 (2004), in which this court held that the plaintiff had standing to bring an antitrust action against the defendant arising from the violation of a competitive bidding law, the trial court denied the defendant's motion to dismiss the antitrust claim. The court granted the defendant's motion to strike, however, on the ground that the plaintiff had not sufficiently pleaded injury to competition as a whole in the relevant market. Specifically, the court concluded that the plaintiff's conclusory allegations—namely, that, "[o]ver the years, [the defendant] has not considered any . . . bidder other than Brown Rudnick for its [liaison services] contract, which has resulted in the elimination of any competition," and that, "[n]ot only was [the plaintiff] irreparably damaged, but the general public was damaged by [the defendant's] anticompetitive actions"—failed to sufficiently allege injury to competition as a whole in the relevant market and therefore were insufficient to support its antitrust claim.

Thereafter, the plaintiff filed a substituted complaint in which it again alleged that the defendant had violated the antitrust act.[8] The defendant again filed motions to

and apportioning them among direct and indirect victims so as to avoid duplicative recoveries" [internal quotation marks omitted]).

[8] The trial court noted that the plaintiff had added the following new allegations to its antitrust claim in the substituted complaint: "Member municipalities pay fees to [the defendant] based [on] the amount of trash they dispose of, and [the defendant] uses the revenue generated by the fees to pay various expenses it incurs, including the [liaison services] contract. The initial [liaison services] contract was issued to Brown Rudnick in 2006 without any competitive bidding, and, in the following years, fewer and fewer entities submitted bids. As a result of this anticompetitive activity, Brown Rudnick's price had not been subjected to market competition, and the market for potential bidders was eliminated. As a further result, member towns of [the defendant] incurred greater, unnecessary expense by paying

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

dismiss and to strike the substituted complaint, in which it incorporated the arguments that it had made in the previous motions to dismiss and to strike. The trial court again denied the motion to dismiss and granted the motion to strike on the grounds that the plaintiff's new allegations also did not "sufficiently allege an increase in prices and/or a reduction in output" as the result of the defendant's conduct and that the plaintiff again had "failed to successfully plead an injury to competition in the relevant market." The court further concluded that the plaintiff had not established that it was an efficient enforcer of the antitrust laws because it had alleged injury to a market of which it was not a member, namely, the market of member municipalities.

The plaintiff then filed a second substituted complaint, alleging, for a third time, that the defendant had violated the antitrust act.[9] Yet again, the defendant filed

higher than market fees for similar work provided by other firms. [The defendant] and its member towns were paying Brown Rudnick $7000 a month at times when there was little or no documentation of work actually performed. At a December 8, 2011 meeting, the quality and costs issues with the Brown Rudnick [liaison services] contract led one [of the defendant's] board member[s] to state that he never observed a representative of Brown Rudnick at any meeting he attended, that he was unaware of any outreach by Brown Rudnick to municipalities in his area, and that the [liaison services] contract seemed to be an unnecessary cost passed on to customers. By granting a monopoly to Brown Rudnick for the [liaison services] contract and allowing it to bill a flat rate without any analysis of its appropriateness, [the defendant] harmed its member towns by passing on these costs through tipping fees and engaged in anticompetitive activity. [The plaintiff] also alleges that [the defendant's] conduct constituted bid rigging, which is a per se anticompetitive activity."

The substituted complaint also included a count alleging, for the first time, that Nonnenmacher had published defamatory statements about Hennessy. The trial court ultimately granted the defendant's motion to strike that count as procedurally improper and denied the plaintiff's motion to amend the substituted complaint to include the defamation count and to cite in Hennessy and Nonnenmacher as parties. Those rulings are not at issue in this appeal.

[9] The plaintiff made the following new allegations in the second substituted complaint: (1) "[a]s part of their conspiracy, in order to cloak the nature

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

motions to dismiss and to strike the second substituted complaint in which it incorporated the arguments that it had made in its motions to dismiss and to strike the complaint and substituted complaint. Thereafter, the trial court, sua sponte, ordered the parties to file supplemental briefs addressing the following issues: (1) "Whether the court should construe [the defendant] as

---

of some of the services, [the defendant] and Brown Rudnick agreed that the . . . liaison services would be provided on a flat fee basis . . . and that the services would be generically described on the invoices"; (2) "Brown Rudnick proposed an hourly rate . . . that was higher than the hourly rate proposed by [the plaintiff]"; (3) "[the defendant] and Brown Rudnick were both aware that the number of hours anticipated each month . . . was fabricated and without any basis"; (4) "[t]he market for . . . liaison services includes many providers such as public affairs businesses and government relations professionals"; (5) "[the plaintiff] is a participant in that market"; (6) "[the defendant] engaged in conduct to subvert competition for . . . liaison services by maintaining a private agreement with Brown Rudnick . . . for a flat fee . . . regardless of the amount of services provided"; (7) "[the defendant] agreed to pay that fee in order to secure impermissible lobbying services"; (8) "[i]t was known in the market that [the defendant] would not consider anyone other than Brown Rudnick for the [liaison services] contract"; (9) "[w]ith [the defendant's refusal] to consider any bidders other than Brown Rudnick, the number of firms bidding on the [liaison services] contract steadily declined"; (10) in 2007, the defendant's chief executive officer "stated [that] he would 'revisit' the [request for qualifications] and return to the [defendant's] [b]oard with a 'stable' of choices . . . [but] he did not do so . . . [and] continued to engage in anticompetitive activity to ensure that Brown Rudnick received the contract"; (11) in 2009, "[the defendant] colluded to rig the bidding process to arrange for two existing vendors for nonmunicipal government liaison services to submit bids for the [liaison services] contract in order to give the appearance of open bidding"; (12) the defendant's conduct "led many providers of [liaison] services to refuse to participate in [the defendant's] public bidding process because of the understanding [that] the contract would only be awarded to Brown Rudnick"; (13) "[d]ue to the poor quality of the performance of the [liaison services] contract . . . several municipalities left [the defendant]"; (14) "Brown Rudnick's fee for its . . . liaison services was inflated over the market rate"; (15) "[i]n 2002, before [the defendant] engaged in anticompetitive activity with Brown Rudnick, [the defendant] received substantially similar services for a monthly fee of $4000"; (16) "[b]y engaging in anticompetitive activity . . . the quality of services provided under the [liaison services] contract was compromised, and Brown Rudnick's inflated price [had] not been subjected to market competition"; and (17) "[the plaintiff] notified the attorney general of this action."

the equivalent of the state of Connecticut, and, therefore, entitled to sovereign immunity requiring dismissal of the case for lack of subject matter jurisdiction''; (2) ''[w]hether the court should construe [the defendant] as the equivalent of a political subdivision of the state of Connecticut, and therefore a special function governmental unit, under the Local Government Antitrust Act [of 1984], 15 U.S.C. § 34 et seq. [2012], specifically, 15 U.S.C. § 35, which provides that no damages may be recovered from a local government in an antitrust action [and] if so, is the present case nonjusticiable in that it is not capable of resulting in practicable relief to the plaintiff''; and (3) ''[i]f the [defendant] is the equivalent of a political subdivision of the state of Connecticut, is its alleged anticompetitive behavior exempt under the foreseeability standard set forth in . . . *Lafayette* v. *Louisiana Power & Light Co.*, 435 U.S. 389, 414–15, [98 S. Ct. 1123, 55 L. Ed. 2d 364] (1978) . . . .''[10] In its supplemental brief in support of its motion to dismiss the second substituted complaint, the defendant contended that (1) it was entitled to sovereign immunity because it was acting on behalf of the state, (2) even if it was not entitled to sovereign immunity, it was entitled to immunity under 15 U.S.C. § 35 because it is a political subdivision of the state, and (3) it was exempt from the antitrust laws under *Lafayette* and § 35-31 (b) because it was carrying out the duties imposed by § 22a-268.

---

[10] In *Lafayette*, the United States Supreme Court held that, ''[w]hile a subordinate governmental unit's claim to [the state action exemption from antitrust actions] is not as readily established as the same claim by a state government sued as such . . . an adequate state mandate for anticompetitive activities of cities and other subordinate governmental units exists when it is found from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of.'' (Internal quotation marks omitted.) *Lafayette* v. *Louisiana Power & Light Co.*, supra, 435 U.S. 415.

The trial court concluded that the defendant was not exempt from the antitrust act under *Lafayette* and § 35-31 because § 22a-268 did not require the defendant to enter into a contract for liaison services. Although the trial court did not expressly address the plaintiff's contentions that it was entitled to sovereign immunity and immunity pursuant to 15 U.S.C. § 35, it implicitly rejected those claims. Accordingly, the court denied the defendant's motion to dismiss.

With respect to the defendant's motion to strike, the trial court noted that the plaintiff had claimed that the defendant's conduct constituted both a per se violation of the antitrust act and a violation under the rule of reason. See, e.g., *Bridgeport Harbour Place I, LLC* v. *Ganim*, 303 Conn. 205, 214–15, 32 A.3d 296 (2011) ("A violation of [antitrust law] generally requires a combination or other form of concerted action between two legally distinct entities resulting in an unreasonable restraint on trade. . . . If a restraint alleged is among that small class of actions that courts have deemed to have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, it will be unreasonable per se . . . . Most antitrust claims, however . . . are analyzed under a rule of reason analysis which seeks to determine if the alleged restraint is unreasonable because its anticompetitive effects outweigh its procompetitive effects." [Internal quotation marks omitted.]). The trial court concluded that the plaintiff had not established a per se violation of the antitrust act because, although an agreement between horizontal competing bidders, such as Brown Rudnick and the plaintiff, constitutes a per se violation; see, e.g., *United States* v. *Koppers Co.*, 652 F.2d 290, 294 (2d Cir.) ("[o]ne of the classic examples of a per se violation of [antitrust laws] is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition"

[internal quotation marks omitted]), cert. denied, 454 U.S. 1083, 102 S. Ct. 639, 70 L. Ed. 2d 617 (1981); an agreement between entities with a vertical relationship, such as Brown Rudnick and the defendant, ordinarily does not. See, e.g., *Business Electronics Corp.* v. *Sharp Electronics Corp.*, 485 U.S. 717, 734, 108 S. Ct. 1515, 99 L. Ed. 2d 808 (1988) ("a horizontal agreement to divide territories is per se illegal . . . while . . . a vertical agreement to do so is not" [citation omitted]). The trial court further concluded that the plaintiff had not adequately alleged an antitrust injury to a relevant market because, as in the first substituted complaint, its allegations were conclusory and there was no allegation that the defendant's conduct " 'had an actual adverse effect on competition as a whole in the relevant market of which [the plaintiff] is a member.' "

The trial court also concluded that the plaintiff had not adequately pleaded that the defendant's conduct violated the antitrust act under the rule of reason. With respect to the plaintiff's allegations that the defendant's conduct had reduced the number of competitors for the liaison services contract, that municipalities had declined to deal with the defendant as the result of the poor quality of Brown Rudnick's services, and that the defendant's conduct had increased the price for liaison services, which in turn had led to higher costs for municipalities that dealt with the defendant, the court concluded that all of these allegations were "conclusory and legally insufficient" to establish a prima facie claim of an injury to competition. Finally, the court concluded that, even if the plaintiff had adequately pleaded an antitrust injury, to the extent that establishing that the plaintiff is an "efficient enforcer" of the antitrust laws is required under state law, the plaintiff had failed to adequately plead that element. Accordingly, the trial court granted the defendant's motion to strike the second substituted complaint and rendered judgment in

333 Conn. 672 NOVEMBER, 2019 687

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

favor of the defendant. This appeal and cross appeal followed.

The plaintiff contends on appeal that the trial court incorrectly determined both that the plaintiff had not adequately pleaded that the defendant's conduct constituted a per se violation of the antitrust act and that the defendant's conduct did not violate the antitrust act under the rule of reason. In response, the defendant contends that the plaintiff, in failing to appeal from the trial court's granting of its motion to strike the complaint and its motion to strike the substituted complaint, waived its right to challenge the court's ruling under the rule of reason standard. See *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 850, 168 A.3d 479 (2017). The defendant further claims that, even if the plaintiff did not waive that right, the trial court correctly determined that the plaintiff had failed to adequately plead an antitrust injury under both the rule of reason and the per se standard. In its cross appeal, the defendant contends that the trial court incorrectly determined that (1) the plaintiff has standing to bring an antitrust action against the defendant, (2) the plaintiff's claim is not barred by 15 U.S.C. §§ 34 through 36, and (3) the defendant is not exempt from liability under the antitrust act because it was not acting in furtherance of its statutory obligations when it entered into the liaison services contract with Brown Rudnick. We agree with the defendant that the trial court correctly determined that the plaintiff failed to plead an antitrust injury. We further conclude that, as the result of this failure, the plaintiff lacked standing to bring its antitrust claim. Accordingly, we conclude that the trial court improperly denied the defendant's motion to dismiss the second substituted complaint. Because this conclusion is dispositive, we need not address the other claims raised by the plaintiff on appeal and by the defendant on cross appeal.

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

"The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, supra, 282 Conn. 516.

"The issue of standing implicates [the] court's subject matter jurisdiction." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 567, 775 A.2d 284 (2001). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a [well settled] twofold determination: first, the party claiming

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected.'' (Internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education,* 303 Conn. 402, 411–12, 35 A.3d 188 (2012).

"The fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded. . . . The concepts of standing and legal interest are to be distinguished. The legal interest test goes to the merits, whereas standing concerns the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'' (Citations omitted; internal quotation marks omitted.) *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 491–92, 400 A.2d 726 (1978).

In the present case, the trial court treated the defendant's claims that the plaintiff had failed to allege an antitrust injury and that the plaintiff was not an efficient enforcer of the antitrust act as challenges to the

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

legal sufficiency of the complaint. A number of federal courts, however, have treated the requirement that the plaintiff allege both that it suffered an antitrust injury and that it is an efficient enforcer as implicating the plaintiff's standing to bring an antitrust claim. As the United States Court of Appeals for the Second Circuit stated in *In re Aluminum Warehousing Antitrust Litigation*, 833 F.3d 151 (2d Cir. 2016), "[a]n antitrust plaintiff must show both constitutional standing and antitrust standing at the pleading stage. Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action. . . . [A]ntitrust standing is a threshold, [pleading stage] inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law. . . . The limitation of antitrust standing to a proper party arose because [a]ntitrust law has long recognized that defendants who may have violated a provision of the antitrust statutes are not liable to every person who can persuade a jury that he suffered a loss in some manner that might conceivably be traced to the conduct of the defendants. . . .

"To satisfy the antitrust standing requirement, a private antitrust plaintiff must plausibly allege that [1] it suffered an antitrust injury and [2] it is an acceptable plaintiff to pursue the alleged antitrust violations. . . . In order to establish antitrust injury, the plaintiff must demonstrate that its injury is of the type the antitrust laws were intended to prevent and that flows from that which makes [the defendant's] acts unlawful. . . . Even a plaintiff that has suffered an antitrust injury must also demonstrate that it is a suitable plaintiff, i.e., an efficient enforcer of the antitrust laws." (Citations omitted; internal quotation marks omitted.) Id., 157–58; see also *Gelboim* v. *Bank of America Corp.*, 823 F.3d

759, 770 (2d Cir. 2016) ("[a]n antitrust plaintiff must show both constitutional standing and antitrust standing"), cert. denied, U.S. , 137 S. Ct. 814, 196 L. Ed. 2d 599 (2017); *Ethypharm S.A. France* v. *Abbott Laboratories*, 707 F.3d 223, 232 (3d Cir. 2013) ("[f]or plaintiffs suing under federal antitrust laws, one of the prudential limitations is the requirement of antitrust standing" [footnote omitted; internal quotation marks omitted]); *Tal* v. *Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006) ("antitrust standing requires a private plaintiff to show [1] an antitrust injury; and [2] a direct causal connection between that injury and a defendant's violation of the antitrust laws" [internal quotation marks omitted]), cert. denied, 549 U.S. 1209, 127 S. Ct. 1334, 167 L. Ed. 2d 81 (2007).

This court's standing jurisprudence, under which a plaintiff must allege an injury that is within the "zone of interests to be protected or regulated by the statute . . . in question" and be the "proper party" to bring the claim; (internal quotation marks omitted) *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 492; is consistent with the requirements under federal antitrust law that the plaintiff must have suffered an "antitrust injury" and that the plaintiff must be an "efficient enforcer" of the antitrust laws. Moreover, " '[t]he legislative history of the [antitrust] act clearly establishes that it was intentionally patterned after the antitrust law of the federal government. . . . [O]ur construction of the [antitrust act] is aided by reference to judicial opinions interpreting the federal antitrust statutes. . . . *Accordingly, we follow federal precedent when we interpret the act unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently.*' . . . [*Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 15–16, 664 A.2d 719 (1995)]; see also id., 15 n.17 ('[w]e note that in 1992, the legislature explicitly incorporated

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

into law its intent that the judiciary be guided by inter-
pretations of federal antitrust statutes when it enacted
[General Statutes] § 35-44b'). The text of § 35-44b pro-
vides: 'It is the intent of the General Assembly that in
construing sections 35-24 to 35-46, inclusive, the courts
of this state shall be guided by interpretations given
by the federal courts to federal antitrust statutes.' "
(Emphasis in original.) *Miller's Pond Co.*, *LLC* v. *New
London*, 273 Conn. 786, 806, 873 A.2d 965 (2005). We
conclude, therefore, that, to have standing to bring a
claim under the antitrust act, a plaintiff must adequately
plead both that it has suffered an antitrust injury and
that it is an efficient enforcer of the antitrust act.
Accordingly, we conclude that a claim that a plaintiff
has failed to allege an antitrust injury or that it has
failed to allege that it is an efficient enforcer of the
antitrust laws implicates the trial court's subject matter
jurisdiction and should be raised by way of a motion
to dismiss.[11]

---

[11] We recognize that the court in *Ethypharm S.A. France* v. *Abbott Labora-
tories*, supra, 707 F.3d 223, noted that the lack of antitrust standing "does
not affect the subject matter jurisdiction of the [federal courts], as . . .
standing [under article three, § 2, of the United States constitution] does,
but prevents a plaintiff from recovering under the antitrust laws." Id., 232.
However, "[s]tanding is not a matter of constitutional law in Connecticut,
but is rather a rule of judicial administration based upon the principle that
the appropriate parties to litigate a dispute are those who are injured or
about to be injured. The purpose of this requirement is generally said to
ensure the existence of that concrete adverseness between the parties that
guarantees that the questions will be framed with the necessary specificity,
that the issues will be contested with the necessary adverseness and that
the litigation would be pursued with the necessary vigor . . . ." (Internal
quotation marks omitted.) *Manchester Environmental Coalition* v. *Stockton*,
184 Conn. 51, 65, 441 A.2d 68 (1981), overruled in part on other grounds by
*Waterbury* v. *Washington*, 260 Conn. 506, 800 A.2d 1102 (2002). As we have
explained, it is well established under Connecticut law that whether a person
is a proper party to bring a claim and whether the claim is within the zone
of interests that the statute was intended to protect implicate the subject
matter jurisdiction of our state courts. See, e.g., *AvalonBay Communities*,
*Inc.* v. *Orange*, supra, 256 Conn. 567.

We recognize that the distinction between subject matter jurisdiction,
which implicates the court's authority to entertain and adjudicate a matter,
and the authority to act pursuant to a statute, which implicates the court's

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

Before addressing the merits of the plaintiff's claim that the trial court incorrectly determined that it had not adequately alleged an antitrust injury, however, we address as a threshold issue the plaintiff's contention that the trial court improperly relied on federal law on this issue for guidance pursuant to § 35-44b. The plaintiff points out that this court "follow[s] federal precedent when [it] interpret[s] the [antitrust] act *unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently.*" (Emphasis added; internal quotation marks omitted.) *Miller's Pond Co., LLC* v. *New London*, supra, 273 Conn. 810. The plaintiff further points out that there are several provisions of the antitrust act at issue in the present case, namely, General Statutes §§ 35-26, 35-27 and 35-28 (a) and (d),[12] and that § 35-28 (a) and (d) have no statutory counterparts in the federal antitrust laws. See *Elida, Inc.* v. *Harmor Realty Corp.*, 177 Conn. 218, 227, 413 A.2d 1226 (1979) ("[§] 35-28 [d] has no specific counterpart in the federal antitrust laws, but rather, it is considered to be a codification of what have come to be known

authority to grant relief on the merits, has caused ongoing confusion in our courts. See, e.g., *In re Jose B.*, 303 Conn. 569, 574, 34 A.3d 975 (2012) ("the distinction between challenges to the trial court's subject matter jurisdiction and challenges to the exercise of its statutory authority is not always clear" [internal quotation marks omitted]). We also recognize the "rule that every presumption is to be indulged in favor of jurisdiction . . . [in order] to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court . . . by allowing the litigant, if possible, to amend the complaint to correct the defect . . . ." (Citations omitted; internal quotation marks omitted.) Id., 579. It is arguable that, in light of this ongoing confusion and our policy of favoring entertaining a case on its merits, we should take a hard look at this court's statutory standing jurisprudence and consider whether we should take steps to conform to the federal rule. Because the parties in the present case have not comprehensively briefed this issue, we leave it for another day.

[12] General Statutes § 35-28 provides in relevant part: "Without limiting section 35-26, every contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of: (a) Fixing, controlling, or maintaining prices, rates, quotations, or fees in any part of trade or commerce . . . or (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person."

as 'per se' violations of the Sherman Act, [15 U.S.C. § 1 et seq.] notably § 1''); see also G. Brodigan, ''The Connecticut Antitrust Act,'' 47 Conn. B.J. 12, 24 (1973) (§ 5 of the antitrust act, codified at § 35-28, ''is a codification of what have come to be known as 'per se' violations'' of federal antitrust laws). Because § 35-28 (a) and (d) have no federal counterparts, the plaintiff contends, the courts are not required to look to federal law when applying those provisions. We disagree. Although Connecticut courts might recognize that certain conduct gives rise to an antitrust injury under § 35-28 (a) or (d) even when the federal courts have not spoken on the question, we can perceive no reason why, if § 35-28 was intended to codify federal case law concerning per se violations, relevant federal case law would not provide guidance on the proper interpretation of the statute. Indeed, the court in *Elida, Inc.* v. *Harmor Realty Corp.*, supra, 230, looked to the federal courts' interpretation of federal antitrust law for guidance in determining whether the conduct at issue in that case constituted a per se violation.

We turn, therefore, to the merits of the plaintiff's claim that the trial court incorrectly determined, on the basis of federal case law, that the plaintiff had not adequately pleaded an antitrust injury. An antitrust injury is ''an injury of the type the antitrust laws were intended to prevent and that flows from that which makes [the] defendants' acts unlawful.'' (Internal quotation marks omitted.) *Tal* v. *Hogan*, supra, 453 F.3d 1253. ''The [Sherman Act] directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself.'' *Spectrum Sports, Inc.* v. *McQuillan*, 506 U.S. 447, 458, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993). ''[T]he [United States] Supreme Court, in a now oft quoted phrase, has stated [that] the antitrust laws . . . were enacted for the protection of competition not competitors.'' (Inter-

333 Conn. 672     NOVEMBER, 2019     695

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

nal quotation marks omitted.) *Colorado Interstate Gas Co.* v. *Natural Gas Pipeline Co. of America*, 885 F.2d 683, 697 (10th Cir. 1989), cert denied, 498 U.S. 972, 111 S. Ct. 441, 112 L. Ed. 2d 424 (1990). Thus, highly competitive conduct, even if it is unfair or illegal, does not come within the scope of the antitrust laws, as long as the conduct does not unreasonably harm competition. See *Four Corners Nephrology Associates, P.C.* v. *Mercy Medical Center of Durango*, 582 F.3d 1216, 1225 (10th Cir. 2009) ("it is the protection of competition or prevention of [monopoly] which is plainly the concern of the Sherman Act, not the vindication of general notions of fair dealing, which are the subject of many other laws at both the federal and state level" [internal quotation marks omitted]). "Thus, [t]he antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." (Emphasis in original; internal quotation marks omitted.) *Elliott Industries Ltd. Partnership* v. *BP America Production Co.*, 407 F.3d 1091, 1124–25 (10th Cir. 2005).

"A violation of [§] 1 [of the Sherman Act] generally requires a combination or other form of concerted action between two legally distinct entities resulting in an unreasonable restrain on trade. . . . If a restraint alleged is among that small class of actions that courts have deemed to have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, it will be unreasonable per se . . . . Most antitrust claims, however . . . are analyzed under a rule of reason analysis which seeks to determine if the alleged restraint is unreasonable because its anticompetitive effects outweigh its procompetitive effects." (Internal quotation marks omitted.) *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 214–15.

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

"A determination of the reasonableness of [the] defendants' conduct, whether through detailed analysis under the rule of reason or through classification of the conduct as a per se violation of [the antitrust laws], is . . . significant [however only] if there has been a showing that the defendants' conduct had some negative impact on competition in a relevant market. The rule of reason and the per se [rule] are simply different approaches to the issue of reasonableness once a restraint on trade has been found . . . and both approaches presuppose the presence of an anticompetitive impact. It is not necessary to engage in a balancing of pro and anticompetitive effects under the rule of reason if there is no anticompetitive effect at all." (Citation omitted; internal quotation marks omitted.) *Federal Paper Board Co.* v. *Amata*, 693 F. Supp. 1376, 1381 (D. Conn. 1988). "In sum, [e]very antitrust suit should begin by identifying the ways in which a challenged restraint might possibly impair competition. This step occasionally reveals that competition is not implicated at all and thus that the parties' dispute is not an antitrust case." (Internal quotation marks omitted.) Id., 1382.

"Anticompetitive effects, more commonly referred to as injury to competition or harm to the competitive process, are usually measured by a reduction in output and an increase in prices in the relevant market." (Internal quotation marks omitted.) *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 215–16; see also *Virgin Atlantic Airways Ltd.* v. *British Airways PLC*, 257 F.3d 256, 264 (3d Cir. 2001) ("whether an actual adverse effect has occurred is determined by examining factors like reduced output, increased prices and decreased quality").

In the present case, the trial court concluded that the plaintiff's allegations that the defendant's conspiracy with Brown Rudnick had the effects of reducing the number of competitors for the liaison services contract,

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

increasing the price that the defendant paid for liaison services, increasing the price that municipalities pay for the defendant's services and decreasing the quality of both the liaison services and the defendant's services were conclusory and legally insufficient. See *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 213 ("With respect to the allegations necessary to state a cognizable antitrust claim, the United States Supreme Court has explained that, in pleading such a claim, a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." [Internal quotation marks omitted.]). The trial court also concluded that the plaintiff had not adequately pleaded an antitrust injury because there was *no* allegation in the second substituted complaint "to demonstrate that [the defendant's] activity had an actual adverse effect on competition as a whole in the relevant market of which [the plaintiff] is a member." The plaintiff challenges these conclusions on appeal and contends that highly detailed and specific allegations are not required in an initial pleading and that, considered in the light most favorable to the plaintiff, the allegations in the second substituted complaint are sufficient to establish a prima facie case that the defendant's conduct had the "anticompetitive effects" of reducing the quality of the defendant's services and increasing its prices.

We agree with the plaintiff to the extent that it contends that the trial court should have considered "the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, supra, 282 Conn. 516. Accordingly,

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

we agree that the trial court should have assumed the truth of the plaintiff's various allegations concerning the economic effects of the defendant's conduct.

Such economic effects do not establish an antitrust injury, however, unless they resulted from *anticompetitive* conduct.[13] See *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 214 ("an act is deemed *anticompetitive* under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality" [emphasis in original; internal quotation marks omitted]). We conclude that the trial court correctly determined that that is not the case here. This court's decision in *Ganim* is instructive. The plaintiff in *Ganim* entered into a contract with the defendant, the city of Bridgeport, to develop a certain waterfront property. Id., 208. According to the plaintiff, the city's mayor had conspired with other defendants to seek bribes and kickbacks from businesses with city contracts. Id., 208–209. When the plaintiff refused to participate in the kickback scheme, the defendants conspired to prevent the plaintiff from fulfilling its contractual obligations, causing the plaintiff to spend millions of dollars in its attempt to complete the project. Id. The plaintiff brought an action against the defendants claiming that

---

[13] In other words, the fact that anticompetitive conduct is *measured* by such effects; see *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 215–16; does not necessarily mean that proof of such effects establishes an antitrust injury. For example, if a business chooses to purchase supplies from a vendor whose products are more expensive than those sold by competitors because the business has family connections with the chosen vendor, it does not follow from the fact that other vendors may choose not to compete to provide the product because they are aware of the family connections, and the fact that the business will have increased expenses that it may well pass on to its customers, that the business has violated the antitrust act. As we discuss more fully subsequently in this opinion, "the antitrust laws protect only the purchaser's freedom to make a choice"; *Doron Precision Systems, Inc.* v. *FAAC, Inc.*, 423 F. Supp. 2d 173, 183 (S.D.N.Y. 2006); not a competitor's right to compete.

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

they had violated the antitrust act by engaging in conduct that "had an actual adverse effect on competition as a whole in the relevant market of undertaking and completing commercial development in the [c]ity . . . in a timely, cost efficient manner." (Internal quotation marks omitted.) Id., 209.

Relying on federal case law, this court concluded in *Ganim* that "the plaintiff's allegation that the defendants took bribes and kickbacks in exchange for steering public contracts does not state a cognizable antitrust claim" because the defendant's conduct was not anticompetitive.[14] Id., 223. Specifically, we cited the deci-

---

[14] This court also observed in *Ganim* that, even if the plaintiff had adequately alleged an antitrust injury, federal courts have concluded that government action is exempt from the antitrust laws under the *Noerr-Pennington* doctrine. *United Mine Workers* v. *Pennington*, 381 U.S. 657, 670, 85 S. Ct. 1585, 14 L. Ed. 2d 628 (1965); *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 136–37, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961); see *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 218–19; see also *George R. Whitten, Jr., Inc.* v. *Paddock Pool Builders, Inc.*, 424 F.2d 25, 34 (1st Cir.) (distinguishing "the narrow issue of whether . . . conduct is exempt from antitrust regulation" under *Noerr-Pennington* doctrine, which exempts attempts to reduce competition through legislation and regulation from Sherman Act, from "the broader issue of whether [the conduct] has in fact violated the Sherman Act"), cert. denied, 400 U.S. 850, 91 S. Ct. 54, 27 L. Ed. 2d 88 (1970). In support of this conclusion, this court in *Ganim* quoted extensively from the decision of the Tenth Circuit Court of Appeals in *Coll* v. *First American Title Ins. Co.*, 642 F.3d 876 (10th Cir. 2011), which held that a private party's use of bribery or other corrupt means to influence government regulation or legislation does not violate federal antitrust laws "because the purpose of the Sherman Act is to regulate business, not political activity." Id., 896; see *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 218–22. This court assumed in *Ganim* that the *Noerr-Pennington* state-action immunity principle applies not only to a party's use of bribery or other corrupt means to influence legislation or regulation, but also to the use of corrupt means to obtain a government contract. A number of federal courts have concluded, however, that that is not the case. See *George R. Whitten, Jr., Inc.* v. *Paddock Pool Builders, Inc.*, supra, 33 ("*Noerr* stressed the importance of free access to public officials vested with significant [policy making] discretion. We doubt whether the [c]ourt, without expressing additional rationale, would have extended the *Noerr* umbrella to public officials engaged in purely commercial dealings when the case turned on other issues."); id. ("The state legislatures, by enacting statutes requiring public bidding, have decreed that government purchases

sion of the United States District Court for the District of Connecticut in *Federal Paper Board Co.* v. *Amata*, supra, 693 F. Supp. 1383, for the proposition that "[t]he payment of bribes by suppliers to a purchasing agent does not by itself establish an anticompetitive effect. Although the bribes may have been illegal and unfair methods of competition, their illegality and unfairness [do] not support an inference that the bribes restrained competition. On the contrary, bribery could have been consistent with intense competition among the suppliers—some of which resorted to illegal measures to gain an advantage." (Internal quotation marks omitted.) *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn 218. We also cited *Comet Mechanical Contractors, Inc.* v. *E.A. Cowen Construction, Inc.*, 609 F.2d 404, 406–407 (10th Cir. 1980), in which the United States Court of Appeals for the Tenth Circuit held that an allegation that the defendants, certain contractors and the governor of Oklahoma, had conspired to fix bid prices for the construction of two public buildings so that the defendants could force suppliers and subcon-

will be made according to strictly economic criteria. . . . We conclude, therefore, that the immunity for efforts to influence public officials in the enforcement of laws does not extend to efforts to sell products to public officials acting under competitive bidding statutes." [Citation omitted.]); *F. Buddie Contracting, Inc.* v. *Seawright*, 595 F. Supp. 422, 439 (N.D. Ohio 1984) ("*Noerr-Pennington* is concerned with the needs of a representative democracy in the field of public policy making. These needs are not at issue in this case, [in which] the parties are concerned with the award of a competitively bid contract which only incidentally involves a governmental body. The basis for the exemption, therefore, does not apply to this case."); *Czajkowski* v. *Illinois*, 460 F. Supp. 1265, 1279 (N.D. Ill. 1977) ("Courts have recognized that some public activities, such as the purchase of equipment for governmental facilities, involve purely commercial dealings between business and government. . . . In these circumstances, the mantle of state sovereignty is removed and the state activities will be subjected to antitrust scrutiny." [Citation omitted; internal quotation marks omitted.]), aff'd mem., 588 F.2d 839 (1978). Because we conclude that the plaintiff in the present case has not adequately pleaded an antitrust injury in the first instance, we need not consider whether this court correctly assumed in *Ganim* that the *Noerr-Pennington* doctrine exempts from the antitrust act claims arising from the award of a public contract.

tractors to provide kickbacks to the governor did not give rise to an antitrust violation because "[a] buyer and a seller can agree in any particular case to any price they wish," and the defendants' conduct had not prevented the plaintiff from competing with other subcontractors. See *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 222–23. Finally, we cited *Calnetics Corp.* v. *Volkswagen of America, Inc.*, 532 F.2d 674 (9th Cir.), cert. denied, 429 U.S. 940, 97 S. Ct. 355, 50 L. Ed. 2d 309 (1976), in which the court held that a "claim of commercial bribery, standing alone, does not constitute a violation of the Sherman Act." Id., 687; see *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 223. Indeed, although "[t]he parties may break a host of state or federal laws and regulations in making a side deal or in otherwise circumventing the bidding process in reaching a final arrangement . . . they do not breach [§] 1 of the Sherman Act where the alleged vertical agreements involve only one buyer and one seller." *Expert Masonry, Inc.* v. *Boone County*, 440 F.3d 336, 348 (6th Cir. 2006); see also *Parmelee Transportation Co.* v. *Keeshin*, 292 F.2d 794, 804 (7th Cir.) (when plaintiff alleged that defendant had bribed government official to use his influence to ensure that railroads would grant exclusive five year contract to defendant, plaintiff had not adequately pleaded antitrust violation because plaintiff was able to compete for contract, even though "the victory of the successful bidder was made easier by the wrongful conduct of a public official"), cert. denied, 368 U.S. 944, 82 S. Ct. 376, 7 L. Ed. 2d 340 (1961); *Sterling Nelson & Sons, Inc.* v. *Rangen, Inc.*, 235 F. Supp. 393, 400 (D. Idaho 1964) (when plaintiff alleged that defendant had bribed state official to use best efforts to ensure that state made all fish food purchases from defendant, plaintiff had not adequately pleaded antitrust violation because "the Sherman Act must be interpreted in the light of well understood [common-

702        NOVEMBER, 2019      333 Conn. 672

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

law] doctrines relating to monopolies and restraints of trade such as contracts for the restriction or suppression of competition in the market, agreements to fix prices, divide marketing territories, apportion customers, restrict production and the like," and "[n]othing of that kind occurred here"), aff'd, 351 F.2d 851 (9th Cir. 1965), cert. denied, 383 U.S. 936, 86 S. Ct. 1067, 15 L. Ed. 2d 853 (1966).[15]

We see little to distinguish an agreement to provide illegal services in exchange for the award of a public

_____

[15] We note that there is federal case law supporting the contrary position. See *Stearns Airport Equipment Co.* v. *FMC Corp.*, 170 F.3d 518, 526 (5th Cir. 1999) (stating in dictum that evidence that entity used bribery or threats to obtain public contract can give rise to antitrust violation); *George R. Whitten, Jr., Inc.* v. *Paddock Pool Builders, Inc.*, 424 F.2d 25, 34 (1st Cir.) ("efforts to influence government officials acting under statutes requiring competitive bidding are within the scope of the antitrust laws"), cert. denied, 400 U.S. 850, 91 S. Ct. 54, 27 L. Ed. 2d 88 (1970); *Doron Precision Systems, Inc.* v. *FAAC, Inc.*, 423 F. Supp. 2d 173, 183 (S.D.N.Y. 2006) (stating in dictum that allegation of bribery, fraud or unethical procedures that corrupted public entity's award of contract might be sufficient to support claim of antitrust violation); *F. Buddie Contracting, Inc.* v. *Seawright*, 595 F. Supp. 422, 437 (N.D. Ohio 1984) ("[w]here a firm succeeds in tampering with the competitive bidding process in such a manner that competitive bidding becomes a farce, the [c]ourt believes that an unreasonable restraint of trade has occurred"). We find these cases to be unpersuasive. In *George R. Whitten, Jr., Inc.* v. *Paddock Pool Builders, Inc.*, supra, 34, the court engaged in no analysis but simply made a conclusory statement. In *F. Buddie Contracting, Inc.* v. *Seawright*, supra, 437, the court relied on *Richard Hoffman Corp.* v. *Integrated Building Systems, Inc.*, 581 F. Supp. 367 (N.D. Ill. 1984), which involved conduct that had the effect of limiting the public entity's choice of product. See id., 374 ("[i]n the present case, the choice of product is alleged to have been made by . . . the successful bidder, rather than the customer"). In *Stearns Airport Equipment Co.* v. *FMC Corp.*, supra, 526, the court relied on *F. Buddie Contracting, Inc.*, and another case, *Indian Head, Inc.* v. *Allied Tube & Conduit Corp.*, 817 F.2d 938, 947 (2d Cir. 1987), aff'd, 486 U.S. 492, 108 S. Ct. 1931, 100 L. Ed. 2d 497 (1988), in which the defendant's conduct had restricted purchasers' freedom to choose a product. See id., 947 (efforts by defendant, which manufactured steel electrical conduit, to rig vote on proposal allowing use of polyvinyl chloride conduit at meeting of organization that established product and performance requirements for electrical systems gave rise to antitrust violation). In *Doron Precision Systems, Inc.* v. *FAAC, Inc.*, supra, 183, the court relied on *Interstate Properties* v. *Pyramid Co. of Utica*, 586 F. Supp. 1160, 1163 (S.D.N.Y. 1984), in which the court discussed the sham exception to the *Noerr-Pennington*

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

contract from an agreement to give a bribe in exchange for a public contract. We conclude, therefore, that an antitrust injury cannot be inferred from the plaintiff's allegation in the present case that the defendant awarded the liaison services contract to Brown Rudnick because that firm was willing to provide statutorily prohibited lobbying services to the defendant.

The plaintiff contends that *Ganim* is distinguishable because the plaintiff in that case did not allege that the defendants' conduct "precluded general contractors from competing for projects open to public bidding . . . ." *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 217. In contrast, the plaintiff in the present case alleged in the operative complaint that the defendant's conduct had, over the years, reduced the number of competitors for the liaison services contract. Accordingly, the plaintiff contends, its allegations are sufficient to establish an antitrust injury.

We disagree. This court in *Ganim* held that the bare allegation that the defendants required bidders to participate in a corrupt practice as a prerequisite for being awarded a contract is not sufficient to support an inference that competition has been restrained because "any general contractor that wanted to do business with the city could do so . . . ." Id. Accordingly, even if we were to assume in the present case that potential bidders *chose* not to submit bids for the liaison services contract because they were aware that the defendant would award the contract only if the bidder would agree to provide illegal lobbying services, and the potential

doctrine. See footnote 14 of this opinion. The fact that *Noerr-Pennington* immunity does not apply to certain corrupt conduct does not necessarily mean that the conduct is anticompetitive in the first instance. See *George R. Whitten, Jr., Inc.* v. *Paddock Pool Builders, Inc.*, supra, 34 (distinguishing "the narrow issue of whether . . . conduct is exempt from antitrust regulation" under the *Noerr-Pennington* doctrine from "the broader issue of whether [the conduct] has in fact violated the Sherman Act").

bidders did not want or were unable to provide such services, the defendant's conduct did not *prevent* them from competing and, therefore, did not violate the antitrust act.[16] Indeed, we expressly held in *Ganim* that, "even if the plaintiff adequately alleged . . . an anticompetitive impact on the market . . . commercial bribery does not constitute a restraint of trade within the meaning of the Sherman Act." Id., 218; see also *Parmelee Transportation Co*. v. *Keeshin*, supra, 292 F.2d 803–804 (distinguishing "absolute bar to competition," such as horizontal agreement among competitors not to compete, which constitutes violation of Sherman Act, from bribery of government official making "victory of the successful bidder . . . easier," which, although illegal, did not restrain competition).

Moreover, even if we were to assume that potential bidders knew that it would be entirely futile to submit proposals for the liaison services contract because the defendant had made it clear that it was determined to award the contract to Brown Rudnick *regardless of the services that other bidders offered*—which the plaintiff has not alleged—awarding a public contract on a sole source basis in violation of a competitive bidding law

---

[16] Similarly, we reject the plaintiff's claim that "*Ganim* is distinguishable because . . . *Ganim* involved conduct that occurred *after* the contract was awarded, so there was no allegation that the bidding process was compromised." (Emphasis in original.) The court in *Ganim* did not distinguish corrupt government practices that might discourage parties from competing for a government contract *before* the contract is awarded from corrupt practices that might discourage parties from completing the contract *after* the award so that another party, who is willing to participate in the corrupt practice, can complete it. The intent of the government actor is the same in both cases, namely, to ensure that the parties with which it deals will participate in the corrupt practice. As we have explained, refusing to award a government contract unless the contracting party agrees to participate in a corrupt practice may violate a host of laws, but it does not constitute an antitrust injury. See *Bridgeport Harbour Place I*, *LLC* v. *Ganim*, supra, 303 Conn. 217–18 (allegation "that any general contractor that wanted to do business with the city could do so but had to pay to play" was not adequate to establish prima facie case of anticompetitive impact).

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

does not give rise to an antitrust injury because "the antitrust laws protect only the purchaser's freedom to make a choice . . . ." *Doron Precision Systems, Inc.* v. *FAAC, Inc.*, 423 F. Supp. 2d 173, 183 (S.D.N.Y. 2006); see id., 182–83 (finding that plaintiff had not adequately pleaded antitrust violation when it alleged that defendants had violated competitive bidding laws by entering into contract on sole source basis rather than through open bidding process); see also *Colorado Interstate Gas Co.* v. *Natural Gas Pipeline Co. of America*, supra, 885 F.2d 697 ("antitrust laws . . . were enacted for the protection of competition not competitors" [internal quotation marks omitted]); *Security Fire Door Co.* v. *Los Angeles*, 484 F.2d 1028, 1030 (9th Cir. 1973) ("[t]he proscription against restraint of trade . . . seeks only to assure that the [purchaser's] choice of product has been made freely"); *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 303 Conn. 215 ("[i]n order to establish an anticompetitive effect . . . it is not enough to allege an injury to a competitor"). In other words, antitrust laws are designed to protect purchasers and consumers from the restraint of competition, not to protect a competitor's right to compete.

We therefore reject the plaintiff's contention that a violation of the competitive bidding provision of § 22a-268 is, per se, a violation of the antitrust act. As the court recognized in *Doron Precision Systems, Inc.* v. *FAAC, Inc.*, supra 423 F. Supp. 2d 173, "competitive bidding laws and antitrust laws are motivated by very different policies, and therefore a violation of the letter or spirit of a competitive bid statute, unaccompanied by anticompetitive factors bearing [on] the exercise of choice of product, does not create an antitrust problem." (Footnote omitted; internal quotation marks omitted.) Id., 183. Specifically, competitive bidding laws recognize that public officials have an obligation to act in the best interests of taxpayers when entering into

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

contracts, not in their own interest or in the interest of the competitors with which they deal. See, e.g., *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 412–13, 722 A.2d 271 (1999) ("[m]unicipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, *and to benefit the taxpayers, not the bidders*; they should be construed to accomplish these purposes fairly and reasonably *with sole reference to the public interest*" [emphasis in original; internal quotation marks omitted]).

In contrast, the antitrust laws are not intended to embody principles of good government but to protect the freedom of a purchaser to choose the seller with whom it will deal on whatever terms it wants and is able to negotiate, including a price that is greater than the market price or conditions that will make the purchaser less competitive with its competitors. See *Jet-Away Aviation, LLC* v. *Board of County Commissioners*, 754 F.3d 824, 858 (10th Cir. 2014) (Tymkovich, J., concurring) ("from an antitrust perspective, I see no reason to allow a private firm to choose with whom it will deal but not allow a public entity the same freedom"); id. (if public entity violates statute restricting entity's freedom to choose with whom it will deal, proper remedy is to seek relief pursuant to that statute, not through antitrust laws); *Comet Mechanical Contractors, Inc.* v. *E.A. Cowen Construction, Inc.*, supra, 609 F.2d 406 ("[a] buyer and a seller can agree in any particular case to any price they wish" without violating antitrust laws); *Security Fire Door Co.* v. *Los Angeles*, supra, 484 F.2d 1031 ("The competitive bid statute may well serve to limit the freedom of public purchasers to make specific choices on the basis of preference rather than cost. However, a violation of the letter or spirit of a competitive bid statute, unaccompanied by anticom-

petitive factors bearing [on] the exercise of choice of product, does not create an antitrust problem.''); *Doron Precision Systems, Inc.* v. *FAAC, Inc.*, supra, 423 F. Supp. 2d 183 (''While competitive bidding statutes may limit the freedom of public purchasers to make specific choices on the basis of preference rather than cost, the antitrust laws protect only the purchaser's freedom to make a choice in the first place. . . . As long as the consumer . . . chose its product, the antitrust laws were not violated.'' [Citation omitted; internal quotation marks omitted.]).

Elaborating on this point, the District Court in *Doron Precision Systems, Inc.* v. *FAAC, Inc.*, supra, 423 F. Supp. 2d 173, observed that ''[c]ompetitive bidding laws prescribe a series of procedural rituals (preliminary analysis, scoping sessions, interim reviews, requests for proposals, scoring of responses, etc.) intended to eliminate corruption in the awarding of public contracts. These procedures are designed to, and in fact do, minimize managerial discretion. The focus of bidding laws is solely on the [lowest cost] responsible bidder; other critical factors, such as quality, timeliness, reliability, productivity and predictability are downplayed or ignored. In this sense, the public bidding process restricts competition. Many have even suggested that the public competitive bidding process adds needless cost and reduces quality. . . . It is significant that when state and local governments want something done well and promptly, competitive bidding is eliminated. . . . Even more significant, the public bidding process is not followed at all in the private sector. Thus, 'competitive' bidding has nothing to do with promoting quality or choice. It is simply an anticorruption device.

''The antitrust laws, on the other hand, promote 'competition' for the best product, by protecting the free choice of the consumer from restrictions imposed by the seller. Thus, the policies and goals of public bidding laws and antitrust laws are completely different, in a

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

sense even diametrically opposed—while the crux of the antitrust laws is to foster consumer choice, the public bidding laws sacrifice consumer choice to protect the public trust." (Citations omitted.) Id., 183 n.11.

We do not necessarily agree with the court's statements in *Doron* that competitive bidding laws have "*nothing* to do with promoting quality" and that "the public bidding process is not followed *at all* in the private sector." (Emphasis added.) Id. Indeed, one effect of a competitive bidding law may be to force the public entity to choose the most qualified competitor over a competitor that the public entity favors for reasons that are completely unrelated to the competitor's price or qualifications, and private entities frequently obtain multiple bids or estimates in an effort to obtain the lowest price for goods or services, although they are not required to select the lowest qualified bidder. We agree, however, with the court's larger point that "the policies and goals of public bidding laws and antitrust laws are completely different"; id.; because, unlike competitive bidding laws, which are intended to *force* public purchasers to choose the most qualified competitor or to pay the lowest available price for a service or product, the antitrust laws are intended only to ensure that purchasers and consumers have the *freedom* to choose. We conclude, therefore, that an antitrust injury cannot be inferred from the plaintiff's allegation in the present case that the defendant's preselection of Brown Rudnick violated the competitive bidding provision of § 22a-268.

The plaintiff contends, however, that the plain language of § 35-28 (d) provides that colluding to award a public contract to a preselected entity in violation of a competitive bidding law gives rise to an antitrust injury. We disagree. As we have indicated, § 35-28 provides in relevant part that "every contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of: (a) Fixing, controlling,

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

or maintaining prices, rates, quotations, or fees in any part of trade or commerce . . . or (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person.'' Nothing in this language suggests that § 35-28, unlike the Sherman Act, was intended to encompass conduct that does not have the purpose or effect of restricting the freedom of purchasers and consumers to choose. Rather, as we have explained, the statute was intended to be a codification of per se violations of the Sherman Act. See *Elida, Inc.* v. *Harmor Realty Corp.*, supra, 177 Conn. 227 (''[§] 35-28 [d] has no specific counterpart in the federal antitrust laws, but rather, it is considered to be a codification of what have come to be known as 'per se' violations of the Sherman Act, notably § 1''). Moreover, under the plaintiff's interpretation, a *private* commercial entity would violate § 35-28 (d) by refusing to purchase a product from a vendor with the lowest price because the entity, for whatever reason, preferred another vendor. There is no evidence that the legislature contemplated such a bizarre and draconian result.

Finally, we address the plaintiff's contention that this court's decision in *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, supra, 270 Conn. 619, supports the trial court's conclusion that the plaintiff has standing to bring this antitrust action. Although we agree that that is the case, we now conclude that *Cheryl Terry Enterprises, Ltd.*, must be partially overruled. The plaintiff in *Cheryl Terry Enterprises, Ltd.*, was one of three vendors that had submitted bids to the defendant city for a five year contract to provide bus transportation for the city's public schools. Id., 623. Although the plaintiff submitted the lowest bid, the city awarded the contract to another vendor that had submitted the highest bid in violation of a city ordinance requiring the city to award the contract to the lowest responsible bidder. Id. The plaintiff brought an action against the city alleging, among other things, a violation of the antitrust act. Id.

After a jury returned a verdict for the plaintiff on that claim, the city filed a motion to set aside the verdict on the ground that the plaintiff lacked standing to bring the claim, which the trial court granted. Id., 624–25.

On appeal, this court concluded that, "although the legislature has excluded certain organizations and activities from liability under the [antitrust] act, it has not excluded municipalities, or the municipal bidding process, from its provisions." Id., 628. Accordingly, we concluded "that the trial court properly determined that a municipality can be sued for violations of the [antitrust] act." Id., 629. We then rejected the city's claim that, even if a municipality can be sued under the antitrust act, the plaintiff lacked standing to bring an antitrust claim arising from a violation of the competitive bidding laws under this court's decision in *Lawrence Brunoli, Inc.* v. *Branford*, supra, 247 Conn. 411, in which we held that "an unsuccessful bidder [for] a municipal contract has no standing to assert a cause of action for money damages for failure of the municipality to follow its competitive bidding laws, regardless of whether the plaintiff alleges fraud, corruption or favoritism in the bidding process." (Internal quotation marks omitted.) *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, supra, 270 Conn. 631. We concluded that this court could not limit the broad standing conferred by the legislature to bring an antitrust claim against a municipality "in a manner contrary to the plain language of the [antitrust] act." Id., 632. Accordingly, we concluded that the trial court had improperly granted the city's motion to set aside the verdict in favor of the plaintiff on the antitrust claim. Id., 648.

The plaintiff in the present case contends that this court in *Cheryl Terry Enterprises, Ltd.*, "has already decided, as a matter of public policy and pursuant to the text of the [antitrust act], that sham bidding is actionable under [that act]." Although we agree with the plaintiff that that the trial court correctly applied

our decision in *Cheryl Terry Enterprises, Ltd.*, to hold that the plaintiff has standing, we now conclude that our holding in that case must be limited. Specifically, we conclude that, although we correctly held in *Cheryl Terry Enterprises, Ltd.*, that a private entity may bring an action against a municipality under the antitrust act, we now recognize that, to have standing to bring an antitrust action, a plaintiff must adequately allege not only that it is a member of the class of persons that is statutorily authorized to bring such an action, but also that "[1] it suffered an antitrust injury and [2] it is an acceptable plaintiff to pursue the alleged antitrust violations." *In re Aluminum Warehousing Antitrust Litigation*, supra, 833 F.3d 157. This court did not address the specific issue of whether the plaintiff had suffered an antitrust injury in *Cheryl Terry Enterprises, Ltd.* In contrast, we have concluded in the present case that the plaintiff did not have standing to bring an action against the defendant under the antitrust act because, as the trial court correctly held, an allegation that a public entity has awarded a contract to a preselected bidder for corrupt reasons and in violation of a competitive bidding statute does not give rise to an antitrust injury. To the extent that our decision in *Cheryl Terry Enterprises, Ltd.*, is inconsistent with this conclusion, it is overruled.

We conclude, therefore, that the trial court should have treated the defendant's motion to strike on the ground that the plaintiff had not adequately alleged an antitrust injury as a motion to dismiss, because the failure to allege an antitrust injury implicates the plaintiff's standing to bring the antitrust claim.[17] Because we have concluded that the trial court correctly determined that the plaintiff had not adequately alleged an antitrust

---

[17] We recognize, of course, that the trial court had no authority to overrule our decision in *Cheryl Terry Enterprises, Ltd.*, that private parties have standing to bring an antitrust action against public entities arising from a violation of a competitive bidding statute.

Tremont Public Advisors, LLC *v.* Connecticut Resources Recovery Authority

injury, we conclude that the trial court should have dismissed the plaintiff's second substituted complaint. Accordingly, the form of the judgment is improper, and the case must be remanded to the trial court with direction to grant the defendant's motion to dismiss the second substituted complaint. See, e.g., *Pecan* v. *Madigan*, 97 Conn. App. 617, 622, 624, 905 A.2d 710 (2006) (when trial court granted motion to strike certain counts of complaint when it should have dismissed them, Appellate Court remanded case to trial court with direction to dismiss), cert. denied, 281 Conn. 919, 918 A.2d 271 (2007).

The form of the judgment is improper, the trial court's granting of the motion to strike is vacated, and the case is remanded with direction to grant the defendant's motion to dismiss the second substituted complaint.

In this opinion the other justices concurred.